No. 21-2977

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

_____

KEVIN LINDKE

*Plaintiff-Appellant*

v.

JAMES R. FREED,
in his official and personal capacities

*Defendant - Appellee*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan – Southern Division
Honorable Mark A. Goldsmith, District Court Judge

_____

## APPELLANT'S BRIEF

_____

PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellant

# CORPORATE DISCLOSURE STATEMENT

Appellant has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. Fed.  R. App. P. 26.1(a).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. *iii*

STATEMENT IN REGARDS TO ORAL ARGUMENT .......................... *vi*

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW ............ 2

INTRODUCTION ................................................................................ 3

FACTS / STATEMENT OF THE CASE ................................................ 4

SUMMARY OF ARGUMENT .............................................................. 18

STANDARD OF REVIEW .................................................................... 19

ARGUMENT ....................................................................................... 21

I.      The question of whether Freed was engaged in state
        action is not a pure legal question for the judge in the
        Rule 56 environment. ............................................................ 21

II.     Even if the issue is a pure question of law, Appellee
        Freed is clearly a public official operating a public
        forum. .................................................................................. 27

        A.      Using the fourteen-factor test adopted by the
                District Court, Freed was still engaged in state
                action. ...................................................................... 36

CONCLUSION .................................................................................... 39

RELIEF REQUESTED ......................................................................... 40

CERTIFICATE OF COMPLIANCE ..................................................... 42

CERTIFICATE OF SERVICE .............................................................. 43

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS ....................................................... 44

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................ 19, 20, 26

*Basista v. Weir*,
340 F.2d 74 (3rd Cir. 1965) ........................................................ 28

*Baumgartner v. United States*,
322 U.S. 665 (1944) ........................................................ 3

*Bellamy v. Bradley*,
729 F.2d 416 (6th Cir. 1984) ........................................................ 22

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001) ........................................................ 29

*Charudattan v. Darnell*,
510 F. Supp. 3d 1101 (N.D. Fla. 2020) ........................................................ 16

*Charudattan v. Darnell*,
834 Fed. App'x 477 (11th Cir. 2020) ........................................................ 16, 35

*Davison v. Loudoun Cnty.*,
267 F. Supp. 3d 702 (E.D. Va. 2017) ........................................................ 3

*Davison v. Randall*,
912 F.3d 666 (4th Cir. 2019) ........................................................ 16, 23

*George v. Youngstown State Univ.*,
966 F.3d 446 (6th Cir. 2020) ........................................................ 26

*Griffin v. Maryland*,
378 U.S. 130 (1964) ........................................................ 28

*Harris v. Harvey*,
605 F.2d 330 (7th Cir. 1979) ........................................................ 28-29

*Jackson v. VHS Detroit Receiving Hosp., Inc.*,
    814 F.3d 769 (6th Cir. 2016) ........................................................26

*Johnson v. City of Saginaw*,
    980 F.3d 497 (6th Cir. 2020) ........................................................21

*Knight First Am. Inst. at Columbia Univ. v. Trump*,
    928 F.3d 226 (2nd Cir. 2019)......................... 16, 25, 29, 32, 35, 40

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..........................................................4

*Laster v. City of Kalamazoo*,
    746 F.3d 714 (6th Cir. 2014) ........................................................26

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982) ......................................................................29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................19, 24

*Moore v. City of Paducah*,
    890 F.2d 831 (6th Cir. 1989) ..................................................22, 23

*Neuens v. City of Columbus*,
    303 F.3d 667 (6th Cir. 2002) ............................................16, 22, 23

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) ....................................................................3

*Philips v. Pitt Cnty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ........................................................29

*Pierson v. Quad/Graphics Printing Corp.*,
    749 F.3d 530 (6th Cir. 2014) ........................................................19

*Provenzano v. LCI Holdings, Inc.*,
    663 F.3d 806 (6th Cir. 2011) ..................................................19, 24

*Rossignol v. Voorhaar*,
    316 F.3d 516 (4th Cir. 2003) ........................................................29

*Scarborough v Frederick Cnty. Sch. Bd,*
    517 f. Supp 3d 569 (W.D. Va. 2021) ............................................... 39

*Swanson v Griffin,*
    526 F. Supp 3d 1005 (D.N.M. 2021) ............................................... 40

*Tanner v Ziegenhorn,*
    2021 WL 4502080 (E.D. Ark. 2021) ............................................... 39

*Waters v. City of Morristown*,
    242 F.3d 353 (6th Cir. 2001) ....................................................... 28

STATUTES

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 1343 ............................................................................... 1

42 U.S.C. § 1983 ............................................................................ 1, 2

SECONDARY SOURCES

Hannah Morrill, *The Kennedy Family Through the Decades*,
    TOWN & COUNTRY, Oct 8, 2020, *available at*
    https://bit.ly/3ozy0WG..................................................................... 34

Jackie Smith, *Freed a Candidate for Grand Rapids City Manager*,
    THE TIMES HERALD, Jan 29, 2018, *available at*
    https://www.thetimesherald.com/story/news/local/port-
    huron/2018/01/29/freed-candidate-grand-rapids-city-
    manager/1074598001/ ...............................................................38-39

## STATEMENT IN REGARDS TO ORAL ARGUMENT

Appellant, by counsel, requests oral argument as the appeal addresses a matter of critical concern under the First Amendment to the United States Constitution.

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction to entertain and hear this case pursuant to 28 U.S.C. § 1331 and § 1343 as this case involves federal questions under the United States Constitution and federal civil rights under 42 U.S.C. § 1983.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final judgment and all prior orders and decisions as a final judgment was entered on September 27, 2021. **Judgment, RE 35, PageID #1539**. Plaintiff-Appellant timely appealed to this Court on the same day. **Notice of Appeal, RE 36, PageID #1540.**

# STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW

I.   Is there a material question of fact as to whether City Manager James Freed engaged in state action under 42 U.S.C. § 1983?

Appellant answers:      Yes

II.  Even if the issue of whether City Manager James Freed engaged in state action is purely a question of law, did City Manager James Freed engage in state action when operating the "JamesRFreed1" public figure Facebook Page?

Appellant answers:      Yes

# INTRODUCTION

"One of the prerogatives of American citizenship is the right to criticize public men and measures…" *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944). When one of those public men "creates a Facebook page, [he] generally opens a digital space for the exchange of ideas and information." *Davison v. Loudoun Cnty.*, 267 F. Supp. 3d 702, 716 (E.D. Va. 2017). In such circumstances, the First Amendment applies. Social media platforms like Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

The District Court below found that the sued City Manager, James Freed, had not engaged in state action when he deleted Appellant Lindke's (and others') criticizing comments and then permanently blocked Lindke (and others) from the City of Port Huron City Manager's Facebook Page. That decision and resulting take-nothing judgment were in error.

## FACTS / STATEMENT OF THE CASE

Facebook is a "social network" consisting of an online community to facilitate people, businesses, and institutions finding and forming connections through an exchange of different content. *Lane v. Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012). Like many other public figures holding public office, City Manager James R. Freed has a Facebook "Page" (as opposed to his Profile) with a username of "*JamesRFreed1*." **March 26, 2020 Post, RE 28-3, PageID #1154.**

Some technical background first. There are two main types of users as to Facebook: the first are individuals who have "Profiles" and the second are "businesses, brands, organizations *and public figures*" who have Facebook "Pages." **What's the Difference, RE 28-2, PageID #1552-1553.** There is a difference. Users of Facebook can "post" or digitally share text, written messages, photographs, videos, or links to other articles or webpages on their respective Profiles (for individuals) or Pages (for businesses, brands, organizations and public figures). See e.g. **Facebook Posts, RE 28-6, PageID #1157-1411.** As users "post" their text, written messages, photographs, links to articles, and videos, these aggregate within each user's "newsfeed" which creates an ongoing list of

activities happening on Facebook Pages and Profiles to permit a user to "see what's going on" or going "viral" on Facebook. **Your Home Page, RE 28-20, PageID #1478** (https://bit.ly/3DypStq). Here, for example, is a post from the official White House Facebook Page and some comments thereafter—



Unless expressly banned, everyone can comment on "public" posts on Facebook Pages. Users can also add written "reply" comments to prior submitted comments. **How Do I Comment, RE 28-21, PageID #1480.** In addition, users can "like," "heart," "dislike" (i.e. clicking a thumbs-up

sign, heart, or an angry face) or otherwise "comment" in response to the "posts."

Comments by users are generally not moderated or pre-approved by Facebook prior to being displayed online, but posts or comments can be removed, in infrequent instances, for not meeting basic "community standards" required by the social media platform as a term of its use. See https://www.facebook.com/communitystandards/. However, unfavorable comments of and regarding government officials, objections to government policies or announcements, and general dissent to ideas or concepts shared in "posts" are not improper uses under Facebook's community standards. *Id.* Notwithstanding, the owner or administrator of a Page can individually delete comments/replies made in response to a post on the Page. **How Do I Hide or Delete, RE 28-22, PageID #1481.** He or she can also ban particular commenting users. **How Do I Ban Or Unban Someone, RE 28-23, PageID #1482-1483.** While the Facebook system effectuate comment deletes and user banishments, the question is whether the First Amendment prohibits such by public actors?

### *James Freed*

Appellee James R. Freed is the City Manager of the City of Port

Huron. He has two separate Facebook accounts—one is a "public figure" *Page* (https://www.facebook.com/jamesrfreed1[1]) and the other is a personal *Profile* (https://www.facebook.com/james.freed.3192). On the public figure Facebook Page, Freed regularly makes posts for general public dissemination, including things like official policy announcements and official city government communications; highlights of local business, nonprofits, and members of the community from, in, and involving the City of Port Huron for self-promotion; and pithy posts for general humor and enjoyment of the constituents of the City of Port Huron. **Facebook Posts, RE 28-6, PageID #1157-1411.** Here are a few examples—



---

[1] Appellee Freed has disabled the Facebook Page post-suit.

Freed also further crafts his public "online" image by using photographs of his family and participation with community stakeholders to broadcast to constituents that he, as part of his office, is a wholesome family man and an important member of the community. *Id*. This is not new or unusual (or even improper) in politics. E.g. **Biden Tweet, RE 28-17, PageID #1475** (https://t.co/LjLLIjvP1C, POTUS valentines for First Lady Biden); **Shirkey Tweet, Biden Tweet, RE 28-18, PageID #1476 (**https://t.co/rxslEoKY1b, Michigan Senate Majority Leader's grandson winning); **Whitmer Tweet, RE 28-19, PageID #1477** (https://t.co/pUpsYe0UFq, Governor's family dogs). After all, social media is now established and mandatory retail politics.[2]

Freed's Facebook Page is no different. The "JamesRFreed1" social media account is tied to the local government, and not solely to Mr. Freed personally. The public figure "JamesRFreed1" Facebook Page is registered to the City of Port Huron's physical address ("100 McMorran Blvd, Port Huron, Michigan 48060"), the City's website ("http://www.porthuron.org"), the City's general email address

---

[2] See Michelle Kraus, *Hillary Clinton Redefines Retail Politics Over Social Media*, Huffington Post, Apr 25, 2015 *available at* https://www.huffpost.com/entry/hillary-clinton-redefines_b_7070658.

("CommunityComments@porthuron.org"), and has a designated administrator of James Freed, the City Manager. **JamesRFreed1 Page Profile Information, RE 28-4, PageID #1155**; see also **City Manager Webpage, RE 28-14, PageID #1468** (containing link to "JamesRFreed1" Facebook Page). These registration settings, linked to the city government, lack any indicia of private party status for regular users. See **About [Page], RE 1-1, PageID #17** (what normal users see).

Additionally, the public figure Facebook Page has been set to be "visible to everyone;" however users "cannot contact [the] Page privately." **Page Settings, RE 28-5, PageID #1156.** The official photograph selected by Freed to be associated with the account (but was changed after this lawsuit started) is of Freed while at the elected city commissioners' meeting chambers at city hall and has him wearing his City of Port Huron government lapel pin, just like Congressmen wear while in the Capitol. **March 26, 2020 Post, RE 28-3, PageID #1154**. This is the exact same official government picture as on the City Manager's website. **City Manager Webpage, RE 28-14, PageID #1466.**

The interaction and understanding of the public were consistent with the account having a public status while on social media. Citizens would access, join, and "follow" Freed's Facebook Page "for city information." **DeWitt Dep., RE 28-7, PageID# 1414.** The public posts made to the Facebook Page—discussing matters of public concern—then permitted citizens to make related or unrelated "comments," both supportive or judgmental. See e.g., **March 26, 2020 Post, RE 28-3, PageID #1154**; see also **Lindke Dep., RE 28-11, PageID #1443.** A great example of confirming a public forum is Freed's post from March 26, 2020. **March 26, 2020 Post, RE 28-3, PageID #1154.** By this example post, Freed was advocating how his local government ("we") supports Governor Whitmer's then social distancing measures imposed as a result of the COVID-19 crisis and the City's complementary decision for early installation of the community fishing dock that "we" (meaning the government) did for those who wish to "social distance while fishing." *Id*. In response, one user unrelatedly asked if the City of Port Huron will be picking up lawn and leaf bags soon, to which Freed confirmed the same by replying. *Id.* However, another user relatedly questioned the action of installing the fishing dock and whether it would be furtherance of the

social distancing directives in effect in Michigan. *Id.* No reply was offered. *Id.* [3]

### *Testimony of Commenters*

At the heart of this case is the undisputed fact that Freed is not receptive to comments that are highly critical of his official actions, the actions of the Mayor of Port Huron (a political ally), and the actions or inactions of his city government over which he is in charge of. It is undisputed that that he simply deleted unfavorable comments and banned certain users from further commenting when not complimenting or supporting his desired message or viewpoint.

Witnesses confirmed Freed's concessions. Marjorie DeWitt, a local individual who works within Port Huron, testified that she was a follower Freed's Facebook Page for city information for "at least a year." **DeWitt Dep., RE 28-7, PageID# 1414.** She explained right after the lockdown had started, she noticed one of Freed's posts regarding Mayor Repp while inside of a local diner and her failing to socially distance. *Id.* DeWitt's comment in response to the photograph of the mayor not socially

---

[3] Notwithstanding the somewhat level of informality of the platform, these individuals, like many other commenters, are not "real life" friends or family of Freed, but rather local residents and citizens.

distancing was "good job social distancing, Mayor" as a "kind of a sarcastic remark." *Id.* She confirmed and knows that her "comment was deleted." *Id*. The comment was made to be "critical" of the Mayor Repp for not following—on more than one occasion—the mandatory health guidelines. ***Id*. at PageID #1415.** DeWitt has a strong interest in the topic because "being around people during this pandemic puts [her] children at risk who are immunocompromised." *Id.* She made the comment hoping the "message would cause change in the way the mayor operated out in public." *Id.* Freed simply deleted it. ***Id*. at PageID #1414.**[4]

Janet St. John is a Facebook user who posted a comment to Freed's Facebook Page. **St. John Dep., RE 28-8, PageID #1419.** She testified that she had serious concerns about a local day care controversy involving a convicted sex offender. *Id.* She was concerned there were no posts by Freed about what was going on and St. John "wanted to know why" not. *Id.* Yet, her comment was deleted. ***Id*. at PageID #1420.**

---

[4] DeWitt now does not trust Freed won't simply delete any such message again if she were to make them. **DeWitt Dep., RE 28-7, PageID# 1416.**

Angry about that, she added a comment containing a link to an ACLU article about the impropriety of deleting comments in such a forum. *Id.* That comment was deleted too. *Id.* St. John made these comments to make Freed "aware" and "look into it," and "do his job" to fight for the children of the community. *Id.* Instead, her comments were deleted. ***Id.* at PageID #1421**.

Christine Woodley testified she also made several comments to the Facebook Page. **Woodley Dep., RE 28-9, PageID #1424**. Like others, Woodley commented on the same picture of Mayor Repp not socially distancing in the same local restaurant. *Id.* She also commented several times about Larry Whitcomb, a twice-convicted sex offender, living off the grid in St. Clair County. *Id.* All told, she made eight to ten different comments. ***Id.* at PageID #1426**. These were all deleted. *Id.* Woodley then posted a link to the ACLU article about how "public officials can't block critics on Facebook." ***Id.* at PageID #1424.** That too was deleted. ***Id.* at PageID #1425.**

Robert Pecar also offered testimony that he posted some comments about the right of free speech in response to when comments made by others were being deleted by "whoever was running that page and

violating our right to free speech" (which we now know to be Freed). **Pecar Dep., RE 28-10, PageID #1434.** He was attempting to advocate to a government official that "there is no place for censorship in America." *Id.* **at PageID #1434-1435.** Ironically and frustratingly, Pecar's comments were deleted and he was banned as a user from Freed's Facebook Page. *Id.* **at 1434 & 1435**. In Pecar's words, Freed "came in and blocked us all, shut down our voice and went on about his merry little way." *Id.* **at 1436.**

Finally, there was Plaintiff Kevin Lindke who also posted four to six comments on the Facebook Page directly questioning the early inaction and inattention of government officials from the City of Port Huron (including Freed and Port Huron Mayor Pauline Repp) regarding the COVID-19 pandemic. **Lindke Dep., RE 28-11, PageID #1445.** Lindke raised a similar concern about Mayor Repp captured in the photograph while she was at a local diner in Port Huron and about the City's response to COVID-19. *Id.* **at PageID #1447 & 1448.** All were deleted. *Id.* **at PageID #1452.** Lindke was banned from posting anything further. *Id*.

In summary, all the deleted comments made were undoubtedly critical but none were crude, vulgar, or threatening. **Id. at PageID #1454; DeWitt Dep., RE 28-7, PageID# 1415; St. John Dep., RE 28-8, PageID #1420; Woodley Dep., RE 28-9, PageID #1426.**

### Freed Deletes and Bans

When the comments and questioning by those connected in various ways with the City of Port Huron were perceived as too critical (like by Lindke, Pecar, Woodley, St. John, and DeWitt), Freed took two general actions. First, he simply deleted (i.e. destroyed) the unfavored comments. Second, Freed prohibited (i.e. banned) those particular commenting-users from ever posting any other additional comments to the Facebook Page thereby precluding any further comments critical of the government officials of the City of Port Huron. E.g. **Lindke Dep., RE 28-11, PageID #1454.** Yet, when the comments were not critical, they were left untouched and many times further responded to by Freed himself. E.g. **March 26, 2020 Post, RE 28-3, PageID #1154.**

### The District Court's Decision

Following discovery, Freed moved for summary judgment. **MSJ, RE 23.** Lindke opposed, largely making the same arguments and

providing the same facts as outlined herein. **Opp. Br., RE 28.** Without any oral argument, the District Court granted summary judgment. **Opinion, RE 34.** As framed by the lower court, "a threshold issue is whether Freed was acting under color of state law when he deleted Lindke's comments on his Facebook page and blocked Lindke from the page." **Opinion, RE 34, PageID #1528.** From its perspective, "whether an individual acted under color of state law is a question of law for the Court's determination" citing *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). ***Id.*** It noted that "neither the Supreme Court nor the Sixth Circuit has yet analyzed the meaning of state action in the context of deleting comments from a social media page or blocking people from a social media page, [but] the Second and Fourth Circuits, as well as several district courts, have recently addressed the issue. ***Id.* at PageID #1530** (citing *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2nd Cir. 2019); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); *Charudattan v. Darnell*, 510 F. Supp. 3d 1101 (N.D. Fla. 2020), aff'd, 834 Fed. App'x 477 (11th Cir. 2020)). After the lower court correctly noted that public officials often decry that their social media accounts are merely personal, not governmental, in nature, when challenged for

deleting individuals' comments from a social media page or blocking that individual from the page, the District Court concluded that Freed's operation (including the comment deletions and user banning) of the *JamesRFreed1* Facebook Page was not state action by pointing to a whopping "non-exhaustive" first-impression fourteen-factor test. **Id. at 1531.** And in applying the test, the District Court did not view the facts presented in the light most favorable to him. It then concluded that "Freed's page demonstrate[s] its overwhelming personal nature and lack of official trappings" and concluded both that Freed was "not engaged in state action when he deleted Lindke's comments and blocked Lindke from the page" and the First Amendment claims fail." **Id. at 1536, 1538.** This appeal now follows.

## SUMMARY OF ARGUMENT

The District Court errored when concluding that City Manager James Freed was not engaged in "state action" when operating (including when deleting unfavorable comments and banning users under) the JamesRFreed1 public figure Facebook Page. The District Court committed one of two foundational errors. First, it errored in concluding that whether a public official is engaging in state action is a pure question of law for the judge instead of a question of fact and then failed to apply the correct standard of analysis for a Rule 56 motion on this disputed record. Secondly and alternatively, even if a pure question of law, the District Court errored in issuing an erroneous minority opinion against the great weight of nationwide authority whether using the test proposed by Appellant Lindke or even under the District Court's own self-made fourteen-factor balancing test. Reversal is required.

## STANDARD OF REVIEW

Appellee Freed was granted summary judgment in his favor. Grants of summary judgment are reviewed de novo. This Court will only affirm a district court's summary judgment decision if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). First, the moving party must show that there are no genuine issues of material fact and that it is legally entitled to judgment. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). Then, the nonmoving party must "present sufficient evidence to permit a reasonable jury to find in its favor." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014). The ultimate question is "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving] plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court must view all of the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255. "[T]he weighing of the evidence and the drawing of legitimate inferences from the facts are jury

functions, *not those of a judge.*" *Anderson*, 477 U.S. at 255 (emphasis added).

# ARGUMENT

The lower District Court premised summary judgment, as a question of law, on the conclusion that Freed was not engaged in state action. This was in error for separate, but overlapping, reasons.

## I. The question of whether Freed was engaged in state action is not a pure legal question for the judge in the Rule 56 environment.

Below, the District Court cited to a single qualified immunity case to explain that its review of whether Freed was "engaged in state action" when deleting Plaintiff Lindke's comments and banning him as a commenter is solely a question of law for the judge to decide. **Opinion, RE 34, PageID #1528.** That conclusion was in error.

In a qualified immunity case, the public official challenging a district court's denial of a motion for summary judgment based on qualified immunity "must concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Johnson v. City of Saginaw*, 980 F.3d 497, 505-506 (6th Cir. 2020). This is critical because it is impossible—in that particular postured legal environment—to ever have a question of fact. Only questions of law are answerable. *Id.* Similarly, in a motion for a directed verdict, the question is whether, without weighing

the credibility of the witnesses or considering the weight of the evidence, there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. *Bellamy v. Bradley*, 729 F.2d 416, 418 (6th Cir. 1984). In such an environment, the court must view the facts in the light most favorable on the non-moving party drawing from that evidence all reasonable inferences in his favor. *Id.*

Against this legal backdrop, the District Court concluded that the question of whether Appellee Freed was "engaged in state action" is a question of law citing to *Neuens*. 303 F.3d at 667 *Neuens* bluntly states that whether an appealing police officer was acting under color of law is a *legal* issue. That is true—but only in *that case as postured*—as a qualified immunity case. This is not the posture of this case. Notwithstanding, the *Neuens* panel reached that confusing conclusion by pointing to page 833 of *Moore v. City of Paducah*, 890 F.2d 831, 833 (6th Cir. 1989). Yet there is nothing in *Moore* to support *Neuens'* bold conclusory statement as binding precedent, let alone in the Rule 56 context. In *Moore*, the trial court granted a directed trial verdict in favor of a private real estate developer given the "lack of proof of a material fact." It was never a *per se* question of law as to whether the private

developer had engaged in state action—it was the failure of proofs by Plaintiffs at trial to meet necessary standards of evidence to allow the case to continue to go to the jury.

Here, this case is in a differently postured environment than *Moore* and *Neuens*. This case was at the Rule 56 stage. It is only a question of law (similar to *Neuens*) *if* no material facts are in dispute. *Davison,* 912 F.3d at 679 ("Whether, *under the undisputed facts*, Randall acted under color of state law is a legal question this Court reviews de novo." emphasis added). Here, however, there are material questions of fact.

In Appellee Freed's motion, he argued that he was not "engaged in state action" because he "operated his Facebook account as a private citizen." **MSJ, RE 23, PageID #642.** To support that assertion, Freed presented four assertions—

- the JamesRFreed1 Facebook page was a privately owned account;

- there was no use of governmental employees and resources in the operation of his Facebook page;

- Freed opened the Facebook Page six years before becoming the City Manager for his personal use as a private citizen, and

- the JamesRFreed1 Facebook Page does not include any reference to his employment with the City.

Upon filing, the question to be answered is whether the moving party sufficiently showed that 1.) there are no genuine issues of material fact (based on its submission) and 2.) that he is legally entitled to judgment as a matter of law. *Provenzano*, 663 F.3d at 811. The trial court deciding the motion may not weigh of the evidence or otherwise draw inferences from that one-sided presentment of facts. Instead, the non-moving party must be given the opportunity to present counter evidence and argument to show there is a material question of fact or there is no entitlement to judgment as a matter of law. When that evidence is received by the trial court, it must review the evidence (i.e. facts) in the light most favorable to the nonmoving party (being Lindke here) and draw all justifiable inferences in the nonmoving party's favor. *Matsushita*, 475 U.S. at 587. To state the obvious—when a jury is demanded, the judge is not the trier of fact.

Here, Plaintiff Lindke present sufficient evidence and inferences from that evidence to sufficiently contradict the four assertions of Appellee Freed and created a material question of fact as to whether Freed was engaged in state action—

| Freed's Assertion(s) | Lindke's Counter Evidence & Counter Response |
|---|---|
| The JamesRFreed1 Facebook page was a privately owned account. | The "public figure" account was operated by Freed in his public role as the City Manager of a Michigan city. **JamesRFreed1 Page Profile Information, RE 28-4, PageID #1155** (listing the Page be associated with porthuron.org; the address of being city hall (not Freed's home); the email being a generic City email address (and not a personal or individualized email of James Freed). |
| There was no use of governmental employees and resources in the operation of his Facebook page. | There were government employees and resources used in the preparation of content for and operating his Facebook page. See **Resp, RE 28, PageID #1138-1139** (citing to **Facebook Posts, RE 28-6, PageID #1219, #1229** (someone taking Freed's picture during various press conferences that would be impossible for Freed to have done himself), **#1231** (Freed being photographed with Councilperson's dinner party); **#1243** (photographed by someone at State of the State address at Michigan's Capitol). There are *many*. **Id. at PageID #1235, #1237, #1245, #1249, #1254, #1257, #1259, #1263, #1269, #1283, #1288, #1304, #1306, #1308, #1324, #1326, #1329, #1332, #1336, #1338, #1353, #1354, #1356, #1357, #1361, #1363, #1371, #1372, #1373, #1378, #1380, #1383, #1387, #1389, #1391, #1400, and #1410.** Someone (likely one or more employee(s) from the City) is clearly helping Freed because he cannot take his own pictures for posting on his Facebook Page. It was done often during normal work hours. |
| Freed opened the account six years before becoming the City Manager for his personal use as a private citizen. | The repurposing of a private account for public activities does not render the initial nature of the account as forever private and is not a dispositive fact. See *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2nd Cir. 2019). |
| The *JamesRFreed1* Facebook Page does not include any reference to his employment with the City. | The assertion is false. **Facebook Screenshot, RE 1-2, PageID #18**. |

What the District Court essentially did was weigh the weak evidence presented by Appellee Freed against the weightier evidence presented by Appellant Lindke and, sitting as if a juror, sought to determine whether Appellee Freed was engaged in state action. **Opinion, RE 34, PageID #1535-1536.** When the District Court judge concluded that "Lindke's points are of de minimis significance," *id.* **at PageID #1535,** he was weighing the evidence. That is improper. "[T]he weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Rather, "the evidence of the nonmovant" (here being Lindke) "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 251-252. See also *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). "The judge's function" at the Rule 56 stage "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016); *George v. Youngstown State Univ.*, 966 F.3d 446, 458-459 (6th Cir. 2020).

When answering whether the operation of the JamesRFreed1 Facebook Page was, in fact, Freed engaging in state action (including

when deleting Lindke's comments and banning him), the trial court should have found a question of fact and is a decision for the *Lindke* jury as a disputed material issue of fact, not for the trial judge to *sua sponte* make on his own is if an all-knowing juror. The District Court usurped the jury's role and acted improper at the Rule 56 posture of this case. Here, when comparing the assertions made by Appellee Freed and the counter-evidence presented by Appellant Lindke, there is clearly a question on fact as reasonable minds could disagree on the competing views and inferences from the collection of evidence on whether Freed was "engaged in state action" when deleting Plaintiff Lindke's comments and banning him as a commenter from the JamesRFreed1 Facebook Page. As such, reversal is required.

## II. Even if the issue is a pure question of law, Appellee Freed is clearly a public official operating a public forum.

Even if this Court somehow concludes that the question of whether Appellee Freed was "engaged in state action" is purely a question of law devoid of disputed facts, the District Court acted against weight of great authority and the applicable standards when finding that there is no state action by Freed as a state actor.

There is no debate that Section 1983 affords a plaintiff various type of relief from constitutional violations committed by state actors. **Opinion, RE 34, PageID #1528.** To be state action, however, the complained of actions by the person must be "related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Duties include both "actual or apparent" duties of one's office. *Id.* However, "[i]f an individual is possessed of state authority and purports to act under the authority, his action is state action." *Griffin v. Maryland*, 378 U.S. 130, 135 (1964). "It is irrelevant that he might have taken the same action had he acted in a purely private capacity." *Id.* See also *Basista v. Weir*, 340 F.2d 74, 80-81 (3rd Cir. 1965).[5] The challenged action of a defendant governmental official will usually be treated as taken under color of law when the official "use[d] the power and prestige of his state office to damage the plaintiff." *Harris v. Harvey,* 605 F.2d 330, 337

---

[5] Even if a public official's actions were motivated by personal animosity, that does not and cannot place him or his acts outside the scope of Section 1983 if he perpetuated his ill feelings towards plaintiff under color of law

(7th Cir. 1979).[6] A challenged action by a governmental official is fairly attributable to state action when "the sole intention" of the official in taking the action was "to suppress speech critical of his conduct of official duties or fitness for public office." *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003). The question of what is fairly attributable to state action "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

Appellant Lindke argued Freed was communicating to the public, which is part of his actual or apparent job duties/powers as the City Manager. **City Charter § 5.1, RE 28-13, PageID #1463** (City Manager "shall be the Chief Administrative Officer" of the City); **City Manager Webpage, RE 28-14, PageID #1467** ("Mr. Freed believes strongly that regular communication with local businesses and residents is essential to good government..."). On the other hand, Appellee Freed argued below

---

[6] Section 1983's color-of-law prerequisite is synonymous with the more familiar state-action requirement applicable to Fourteenth Amendment claims; such analysis is identical. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Both inquiries demand that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

that he was solely operating his Facebook Page—a type of social media account reserved for inter alia public figures—as a private citizen. Freed's argument was the same one made by then-President Trump in *Knight First*. The latter was properly rejected. According to the Second Circuit, "the public presentation" of President Trump's twitter account "bear[s] all the trappings of an official, state-run account." 928 F.3d at 231. The account was clearly used "as a channel for communicating and interacting with the public about" the branch of the government President Trump was associated with. *Id.* The posts can be viewed by any member of the public without being signed into a pre-registered or approval-required social media account. *Id.* The account was registered to the "45th President" and the "header photographs" showed the President engaged in the performance of his official duties. *Id.*

The same things, with the same trappings, exist here. Appellee Freed's account was used as channel for communicating with the public about City issues and matters. E.g. **March 26, 2020 Post, RE 28-3, PageID #1154.** The public figure Facebook Page could be viewed by any member of the public (until curiously self-suspended post-complaint). **Page Settings, RE 28-5, PageID #1156** ("Page is visible to everyone";

"Page is shown to everyone"; and "[t]he ability to narrow the potential audience for News Feed and limit visibility on your posts is turned off."). The account is registered to a generic city email address (i.e. not to Freed's personal or non-work email address), points to the city's general website, has an official address listed being City Hall, and is a Public Figure account. **Page Settings, RE 28-5, PageID #1156.** The header photograph on the JamesRFreed1 Facebook Page is of Freed and the display of his official City of Port Huron governmental pin while standing inside the elected commissioners' meeting room of city hall, and is the same one from the City Manager's webpage. Compare **JamesRFreed1 Page Profile Information, RE 28-4, PageID #1155** with **City Manager Webpage, RE 28-14, PageID #1466.**



The trappings are eerily similar.

Freed also treated the account as being city-based. The language utilized by Freed's posts is starkly plural—i.e. "we" and "us." For example, on April 2, 2020, Freed posted about "a COVID-19 Resource Page _we_ put together." **Facebook Posts, RE 28-6, PageID #1189.** Another example is two weeks later on April 15, 2021 in that "_we_ have been working with community partners and stakeholders on a $462,000 relief effort." **_Id._ at PageID #1178.** While not certainly not fully dispositive, the ongoing use of the term "we" is further objective and contemporaneous evidence of the clear intent and understanding that the JamesRFreed1 Facebook Page was related to we, the officials of the City of Port Huron and its governmental affairs. If this truly was a private account belonging to just Freed, why does he say "we" (rather than "I") so often? It does not make sense if deemed private speech as to Freed only.

Interestingly and relatedly, then-President Trump tried the same "private actor" argument utilized by the lower court when arguing "he was exercising control over a private, personal account" and "the act of blocking was not state action." _Knight First_, 928 F.3d at 234. The Second Circuit was rightly not persuaded because, like here, "the evidence of the

official nature of the Account is overwhelming" even if some personal posts are interspersed throughout. *Id.* The Second Circuit took the position that Plaintiff Lindke similarly asserts this Circuit should adopt (and the District Court failed to)—"once [a public official] has chosen a platform and opened up its interactive space to millions of users and participants, he may not selectively exclude those whose views he disagrees with." *Id.*[7]

The expected argument from Appellee Freed (in parroting and supporting the District Court's conclusion) is that his account has so many pictures of his immediate family that the JamesRFreed1 public figure Facebook Page should be considered *per se* private. In addition to being untrue, that notion should never be legally enough. Politicians and public officials regularly use staged and off-the-cuff photographs of their families, their public interests, and photographs of their participation in the community as part of the normal government communications. As

---

[7] It must be noted that there was never any evidence presented that showed the comments criticizing Freed and his government were deleted because they were somehow posted under what could be treated as a family or personal post related Freed's family. Each are believed to have been posted under a Facebook posting tied to Freed's governmental communications.

added to the lower court record, President Biden conveyed to his wife a special valentine's message. **Biden Tweet, RE 28-17, PageID #1475** (https://t.co/LjLLIjvP1C). Michigan Senator Majority Leader trumpeted his grandson's big win. Shirkey Tweet, **Biden Tweet, RE 28-18, PageID #1476** (https://t.co/rxslEoKY1b). Michigan Governor Whitmer tugged at the heartstrings of dog lovers across Michigan. **Whitmer Tweet, RE 28-19, PageID #1477** (https://t.co/pUpsYe0UFq). Each did so under their governmental social media platforms. Showing one's personal side through official governmental communications platforms for political advantage purposes is nothing new. E.g. See Hannah Morrill, *The Kennedy Family Through the Decades*, Town & Country, Oct 8, 2020 *available at* https://bit.ly/3ozy0WG. Bringing together one's personal life into one's governmental media messaging is a normal decision of the public official for his or her particular political reasons. Freed is no different. Notwithstanding, Freed was not presented with a Sophie's choice; he had same ample channels of private social media posts through his own *private* Facebook Profile. See https://www.facebook.com/james.freed.3192. Yet, he expressly chose to use the account with a larger base of followers that is registered with City Hall's physical address, tied to

the city's official email address, and has a Public Figure status. With the benefits of such come responsibilities. A "public official" who "use[s] a social media account open to the public as an official account for conducting official business… that has interactive features open to the public, making public interaction a prominent feature of the account…, the account is <u>not private</u>." *Knight First*, 928 F.3d at 236 (emphasis added). Freed's actions, at least as to the posts of public matters, are state action and his deleting comments and banning users with a contrary viewpoint is state action and unconstitutional.

In summary, in determining whether a government official's social media activity amounts to state action, First Amendment jurisprudence has focused on two main factors; namely, 1) whether the official uses the account in furtherance of their official duties, and 2) whether the presentation of the account is connected with the official's position. *Charudattan*, 834 Fed. App'x at 481-482; *Knight First*, 928 F.3d at 235-236. Both are easily met here. In 2020, Appellee Freed posted dozens and dozens of official social media posts related to Port Huron's formal positions on public matters, activities, and concerns (including COVID-19), and said communications were publicly posted in

furtherance of Freed's official duties of communicating key government information of the same to the citizenry at large. **City Manager Webpage, RE 28-14, PageID #1467** ("Mr. Freed believes strongly that regular communication with local businesses and residents is essential to good government..."). He chose a public figure Facebook account that has interactive features open to the public. The account is not private by law. *Knight First*, 928 F.3d at 236. Secondly, the registration of the account is connected to Freed's official position within city government. **JamesRFreed1 Page Profile Information, RE 28-4, PageID #1155.** A link to the same was posted on the City Manager's website—something no other private citizen enjoys or could ever enjoy on the City's website. See **City Manager Webpage, RE 28-14, PageID #1468**. As such, the activities of Freed as to the JamesRFreed1 public figure Facebook Page easily amounts to state action. The District Court errored in deciding otherwise as a matter of law.

> ### A. Using the fourteen-factor test adopted by the District Court, Freed was still engaged in state action.

The District Court, in compiling legal snippets across various cases, developed a "non-exhaustive list" of fourteen factors to determine if Freed was engaged in state action rather than using a two-part test outlined

above. Lindke asserts this is not the proper test or at least an overly unnecessary complicated one. Even assuming the shockingly large fourteen-factor test is the correct one, the factors almost perfectly balance in favor of finding that Freed was engaged in state action when operating the JamesRFreed1 public figure Facebook Page. The identified factors tilt in favor of Lindke—

| Factor | Relevant Evidence / Argument |
|---|---|
| 1. How the public official describes and uses the page | **About [Page], RE 1-1, PageID #17**<br>**Facebook Posts, RE 28-6, PageID #1157-1411** |
| 2. How others, including government officials and agencies, regard and treat the page | **DeWitt Dep., RE 28-7, PageID# 1414**<br>**(used for access to city information)** |
| 3. Whether the public official is identified on the page with the public position he or she holds (such as through the title of the page or cover or profile photos); | **About [Page], RE 1-1, PageID #17**<br>**Profile Info, RE 28-4, PageID #1155** |
| 4. Whether the public official uses the page to announce official business | **Facebook Posts, RE 28-6, PageID #1157-1411** |
| 5. How the page is categorized (as either a "government official" or a "public figure") | **About [Page], RE 1-1, PageID #17**<br>**Profile Info, RE 28-4, PageID #1155** |
| 6. Whether the page includes governmental contact information | **About [Page], RE 1-1, PageID #17**<br>**Profile Info, RE 28-4, PageID #1155** |

| | |
|---|---|
| 7. Whether posts are expressly addressed to constituents | **Facebook Posts, RE 28-6, PageID #1157-1411** |
| 8. Whether the public official solicits comments or invites constituents to have discussions on the page | E.g. **March 26, 2020 Post, RE 28-3, PageID #1154**. |
| 9. Whether the content posted relates to official responsibilities and business conducted in an official capacity | **E.g. Facebook Posts, RE 28-6, PageID #1235, #1237, #1245, #1249, #1254, #1257, #1259, #1263, #1269, #1283, #1288, #1304, #1306, #1308, #1324, #1326, #1329, #1332, #1336, #1338, #1353, #1354, #1356, #1357, #1361, #1363, #1371, #1372, #1373, #1378, #1380, #1383, #1387, #1389, #1391, #1400, and #1410.** |
| 10. To whom features of the page are made available | **Profile Information, RE 28-4, PageID #1155** |
| 11. The use of government resources, including government employees, to maintain the page | **Resp, RE 28, PageID #1138-1139** (citing to **Facebook Posts, RE 28-6, PageID #1219, #1229** (someone taking Freed's picture during various press conferences that would be impossible for Freed to have done himself), **#1231** (Freed being photographed with Councilperson's dinner party); **#1243** (photographed by someone at State of the State address at Michigan's Capitol). See also ***id.*** **at PageID #1235, #1237, #1245, #1249, #1254, #1257, #1259, #1263, #1269, #1283, #1288, #1304, #1306, #1308, #1324, #1326, #1329, #1332, #1336, #1338, #1353, #1354, #1356, #1357, #1361, #1363, #1371, #1372, #1373, #1378, #1380, #1383, #1387, #1389, #1391, #1400, and #1410.** |
| 12. Whether creating the account is one of the public official's enumerated duties | No information one way or the other. But **see Resp, RE 28, PageID #1138-1139** ("the City allows, by custom and practice, the various departments to have and operate their own social media accounts and outreach, including having an open forum for communications" citing to City's Police Department Facebook Page ([https://www.facebook.com/PortHuronPolice](https://www.facebook.com/PortHuronPolice)); the City's Parks & Recreation Department Facebook Page ([https://www.facebook.com/phrec](https://www.facebook.com/phrec)); and the City Manager's Facebook Page (**March 26, 2020 Post, RE 28-3, PageID #1154).** |
| 13. Whether the account will become | No information one way or the other. However, Freed has sought to be hired in other jurisdictions (Jackie Smith, |

| | |
|---|---|
| state property when the public official leaves office | *Freed a Candidate for Grand Rapids City Manager*, THE TIMES HERALD, Jan 29, 2018, *available at* https://www.thetimesherald.com/story/news/local/port-huron/2018/01/29/freed-candidate-grand-rapids-city-manager/1074598001/) to which his current public figure Facebook connections to thousands of Port Huron residents (and no Grand Rapids residents) via JamesRFreed1 would be of no value. |
| 14. Whether the public official's social media activity takes place during normal working hours | **Postings are happening during work hours.**<br>**Facebook Posts, RE 28-6, PageID #1157-1411**<br> |

On the current record, with all or a super-majority of the factors weighing heavily in favor of Lindke, Freed is engaged in state action. Even under the District Court's own test, it errored in finding in favor of Freed as a matter of law.

## CONCLUSION

*Knight First* provides the proper general framework for this case and, like other courts around the country, this Court should sanctify it. See *Scarborough v. Frederick Cnty. Sch. Bd.,* 517 F. Supp. 3d 569, 578 (W.D. Va. 2021) ("The Second Circuit's recent decision in *Knight*, which addresses these arguments on strikingly similar facts, is persuasive, and the court will adopt its reasoning."); *Tanner v. Ziegenhorn*, 2021 WL 4502080 (E.D. Ark. 2021) ("The reasoning in *Knight First*… remains

sound and instructive on this point, even though the Supreme Court later ordered the case dismissed as moot."). "A public official… cannot block opposing views from a personal Facebook page that is open to the public and discusses matters of public concern and then claim that the Facebook page does not have sufficient indicia of a public forum to be subject to the First Amendment." *Swanson v. Griffin*, 526 F. Supp. 3d 1005, 1013 (D.N.M. 2021). That is what Freed did, at least as to posts on the public figure Facebook Page discussing matters of public concern and leaving the ability to comment open for only positive, supportive comments while deleting critical ones and banning the disfavored commenters. The District Court errored in passing aside the matter as not being engaged in state action. Reversal is required.

## RELIEF REQUESTED

WHEREFORE, the Court is vacated the final judgment entered by the lower court; reverse the grant of summary judgment in favor of Appellee Freed; and remand the matter for further proceedings.

Date: December 8, 2021

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorneys for Appellants

# CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Century School Book 14-point font. The brief, including headers and footnotes, contains 7,540 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: December 8, 2021          s/ Philip L. Ellison
                                                  PHILIP L. ELLISON
                                                  OUTSIDE LEGAL COUNSEL PLC
                                                  PO Box 107
                                                  Hemlock, MI 48626
                                                  (989) 642-0055
                                                  pellison@olcplc.com

                                                  Attorneys for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: December 8, 2021        s/ Philip L. Ellison
                              PHILIP L. ELLISON
                              OUTSIDE LEGAL COUNSEL PLC
                              PO Box 107
                              Hemlock, MI 48626
                              (989) 642-0055
                              pellison@olcplc.com

                              Attorneys for Appellants

# DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 1-1 | #17 | About [Page] |
| 23 | #623-659 | Motion for Summary Judgment |
| 28 | #1117-1150 | Response in Opposition to MSJ |
| 28-2 | #1152-1153 | What's the Difference |
| 28-3 | #1154 | March 26, 2020 Post |
| 28-4 | #1155 | JamesRFreed1 Page Profile Information |
| 28-5 | #1156 | Page Setting |
| 28-6 | #1157-1411 | Facebook Posts |
| 28-7 | #1412-1416 | DeWitt Deposition Transcript |
| 28-8 | #1417-1421 | St. John Deposition Transcript |
| 28-9 | #1422-1427 | Woodley Deposition Transcript |
| 28-10 | #1428-1438 | Pecar Deposition Transcript |
| 28-11 | #1439-1457 | Lindke Deposition Transcript |
| 28-13 | #1462-1465 | City Charter § 5.1 |
| 28-14 | #1466-1468 | City Manager Webpage |
| 28-17 | #1475 | Biden Tweet |
| 28-18 | #1476 | Shirkey Tweet |
| 28-19 | #1477 | Whitmer Tweet |
| 28-20 | #1478-1479 | Your Home Page |
| 28-21 | #1480 | How Do I Comment |
| 28-22 | #1481 | How Do I Hide or Delete |
| 28-23 | #1482-1483 | How Do I Ban or Unban Someone |
| 34 | #1523-1538 | Opinion |
| 35 | #1539 | Judgment |
| 36 | #1540 | Notice of Appeal |