No. 21-2977
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

KEVIN LINDKE

Plaintiff – Appellant

v.

JAMES R. FREED, in his official and personal capacities

Defendant - Appellee

_____

ON APPEAL FROM A JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION
CIVIL ACTION NO. 2:20-cv-10872
_____

APPELLEES' BRIEF ON APPEAL
_____

**ORAL ARGUMENT REQUESTED**
_____

PHILIP L. ELLISON (P74117)          TODD J SHOUDY (P41895)
Outside Legal Counsel PLC           Fletcher Fealko Shoudy & Francis,PC
Attorney for Plaintiff-Appellant    Attorneys for Defendant – Appellee
P.O. Box 107                        1411 Third Street, Suite F
Hemlock, Michigan 48626             Port Huron, Michigan 48060
(989) 642-0055                      (810) 987-8444
pellison@olcplc.com                 tshoudy@fletcherfealko.com

## CORPORATE DISCLOSURE STATEMENT

Appellee has no parent corporation and is not a publicly held corporation owning

10% or more of stock of a party. FRAP 26.1(a).

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................... viii

COUNTER-JURISDICTIONAL STATEMENT ..................................................... ix

COUNTER STATEMENT OF ISSUES PRESENTED...........................................x

COUNTER-STATEMENT OF THE CASE ...........................................................1

I.  PROCEDURAL HISTORY ........................................................................1
II.  Counter Statement of Facts ......................................................................2
   A.  Appellee's Facebook Page ..................................................................2
   B.  Appellee's Facebook Page after his Employment with the City of Port
       Huron..................................................................................................4
   C.  Plaintiff's Posts on Defendant's Facebook Page .......................................10

ARGUMENT ......................................................................................................11

I.  SUMMARY OF ARGUMENT ..................................................................11
II.  Counter-Standard of Review ...................................................................13
III.  The Trial Court's RULING WAS CORRECT ...........................................13
   A.  The Trial Court Was Correct, Whether Defendant Engaged in State Action
       Is a Question of Law. ......................................................................14
   B.  The Trial Court Correctly Found that Appellee Did not Engage in State
       Action Because he Operated his Facebook Page in a Personal Capacity...17

   1. The Trial Court's Factors for Addressing State Action in the Context of
      Public Officials' Social Media Pages .......................................................18
   2. Appellant's First Amendment Claims Fail When Applying the Factors to
      Mr. Freed's Facebook Page. ....................................................................20

   a. Factors Regarding the Appearance of Mr. Freed's Facebook Page Show
      that the Page Is "Overwhelmingly Personal in Nature"...........................20
   b. The Factors Regarding the Content of Mr. Freed's Facebook Page Also
      Show that the Page Was a Personal Account..........................................24

IV.  THE TRIAL COURT COULD HAVE GRANTED SUMMARY
     JUDGMENT ON ALTERNATE THEORIES. ...........................................27

i

A. The City Manager's Facebook Page is a nonpublic forum, and the restrictions drawn on Plaintiff's speech were reasonable..........................28

B. Defendant was entitled to qualified immunity on the damages claim because the law regarding government officials' use of social media is not clearly established. ......................................................................29

C. Plaintiff cannot establish a *Monell* claim. ...................................30

D. Plaintiff's claims for injunctive and declaratory relief are barred because (1) injunctive and declaratory relief is not available against a defendant in his individual capacity; (2) the Court has no occasion to order relief against the Facebook account of an official City Manager page that does not exist; and (3) Plaintiff's claims are moot because the Facebook Page is unpublished with no plans to reactivate it...................................31

CONCLUSION .......................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Akers v. McGinnis*,
352 F.3d 1030 (6th Cir. 2003) ..................................................................33

*Ammex, Inc. v. Cox*,
351 F.3d 697 (6th Cir. 2003) ....................................................................33

*Biden v. Knight First Amend. Inst.*,
141 S. Ct. 1220; __ U.S. __ (2021).................................................. 18, 23

*Blum v. Yaretsky*,
457 U.S. 991 (1982).................................................................................15

*Brown v. Montoya*,
662 F.3d 1152 (10th Cir. 2011) ...............................................................31

*Campbell v. Reisch*,
986 F.3d 822 (8th Cir. 2021) ...................................................................20

*Charudattan v. Darnell*,
510 F.Supp.3d 1101 (N.D. Fla. 2020) .............................................. 19, 23

*Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................13

*Cuyler v. Sullivan*,
446 U.S. 335 (1980)..................................................................................15

*Davison v. Randall*,
912 F.3d 666 (4th Cir. 2019) ............................................. 19, 20, 25, 27

*Davison v. Loudoun Cty. Bd. of Supervisors*,
912 F.3d 666 (4th Cir. 2019) ..................................................27

*Demis v. Sniezek*,
558 F.3d 508 (6th Cir. 2009) ..................................................33

*Franklin v. Kellogg Co.*,
619 F.3d 604 (6th Cir. 2010) ..................................................13

*Garnier v. Poway Unified Sch. Dist.*,
No. 17-CV-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247
(S.D. Cal. Sept. 26, 2019) ......................................................29

*Gay v. Cabinet for Health & Family Servs. Dep't*,
No. 18-5285, 2019 U.S. App. LEXIS 2336 (6th Cir. Jan. 23, 2019) .....................32

*Goldstein v. Chestnut Ridge Volunteer FiR. Co.*,
218 F.3d 337 (4th Cir. 2000) ..................................................15

*Good News Club v. Milford Central Sch.*,
533 U.S. 98 (2001)................................................................28

*Green v. Mansour*,
474 U.S. 64 (1985)................................................................33

*Greenawalt v. Ind. Dep't of Corr.*,
397 F.3d 587 (7th Cir. 2005) ..................................................31

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)..............................................................29

*Helms v. Zubaty*,
495 F.3d 252 (6th Cir. 2007) ..................................................28

*Jennings v. Patterson*,
488 F.2d 436 (5th Cir. 1974) ...................................................15

*Johnson v. City of Saginaw*,
980 F.3d 497 (6th Cir. 2020) ...................................................15

*Kentucky v. Graham*,
473 U.S. 159 (1985)...................................................30

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
928 F.3d 226, 236 (2d Cir. 2019)............................................ 18, 19, 20

*Lewis v. Clarke*,
137 S. Ct. 1285; __ U.S. __ (2017)..........................................32

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982)...................................................17

*McGuire v. Strange*,
83 F. Supp. 3d 1231 (M.D. Ala. 2015) ...................................................31

*Miller v. Davis*,
15-5880, 2015 U.S. App. LEXIS 23060 (6th Cir. Aug. 26, 2015)........................32

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)...................................................29

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)............................................ 1, 30, 31

*Nat'l Collegiate Ath. Ass'n v. Tarkanian*,
488 U.S. 179 (1988)...................................................18

*Neuens v. City of Columbus*,
303 F.3d 667 (6th Cir. 2002) ..................................................... 14, 15, 16

*Nieto v. Kapoor*,
268 F.3d 1208 (10th Cir. 2001) ................................................................15

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ...................................................................29

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*,
501 F.3d 592 (6th Cir. 2007) ...................................................................30

*Scott v. Harris*,
550 U.S. 372 (2007)..................................................................................16

*Small v. Brock*,
963 F.3d 539 (6th Cir. 2020) ...................................................................33

*United States v. Stein*,
541 F.3d 130 (2d Cir. 2008)......................................................................15

*Wagschal v. Skoufis*,
442 F. Supp. 3d 612 (S.D.N.Y. 2020) ................................................ 29, 34

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989)....................................................................................31

**Rules**

Fed. R. Civ. P. 65(a)..................................................................................13

Fed. R. Civ. P. 56......................................................................................34

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellee ("Defendant") requests oral argument on the basis that such would assist the decisional process in determining whether the lower court properly dismissed Plaintiff-Appellant's ("Plaintiff") Complaint. Defendant-Appellee believes that such oral argument would assist in an understanding of the facts and arguments raised by the parties given that we are dealing with somewhat novel and developing issues involving the use of social media.

## COUNTER-JURISDICTIONAL STATEMENT

Defendant agrees that the Trial Court generally has jurisdiction over claims filed pursuant to 42 U.S.C. § 1983. However, for the reasons stated herein, Defendant agrees with the lower court that it did not have subject matter jurisdiction over the claims against Defendant James R. Freed because he was not engaged in state action.

Except as so stated, Defendant does not disagree with Plaintiff's jurisdictional statement.

## COUNTER STATEMENT OF ISSUES PRESENTED

I.      Did the trial court properly hold that Defendant Freed's personal Facebook page was a private account and thus not subject to the strictures of the First Amendment?

Plaintiff-Appellant states:          No
Trial Court states:                   Yes
Defendant-Appellee states:        Yes

II.     Were there other alternative grounds the Court could have used to dismiss Plaintiff's claims, in whole or in part?

Plaintiff-Appellant states:          No
Trial Court states:                   Did not address
Defendant-Appellee states:        Yes

## COUNTER-STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY

Plaintiff Kevin Lindke filed the present lawsuit on April 9, 2020 against James Freed in his individual and official capacity alleging that when Mr. Freed deleted posts made on Mr. Freed's personal Facebook page and blocked Plaintiff from making additional posts, Mr. Freed violated the First Amendment to the United States Constitution (Complaint, R. 1, Page ID # 2 [¶¶4-5,46-48]).

After the close of discovery, Defendant Freed filed a motion for summary judgment (Mot. for Summ. J., R. 23).  In the motion, Defendant argued summary judgment was proper for the following reasons:

1. Plaintiff cannot establish that there was "state action" involved in Mr. Freed's operation of his personal Facebook page, which is a necessary element of a First Amendment claim.

2. Even if it is assumed, *arguendo*, that there is state action, the City Manager's Facebook Page is a nonpublic forum, and the restrictions drawn on Plaintiff's speech were reasonable.

3. Defendant is entitled to qualified immunity on the damages claim because the law regarding government officials' use of social media is not clearly established.

4. Plaintiff cannot establish a *Monell* claim.

5. Plaintiff's claims for injunctive and declaratory relief are barred because (1) injunctive and declaratory relief is not available against a defendant in his individual capacity; (2) the Court has no occasion to order relief against the Facebook account of an official City Manager page that does not exist; and (3) Plaintiff's claims are moot because the Facebook Page is unpublished with no plans to reactivate it.

Plaintiff filed a Response to Defendant's Motion for Summary Judgment on March 24, 2021. (Resp. to Mot. For Summ. J., R. 28). Defendant filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment on April 9, 2021. (Reply to Pl's Resp. to Mot. for Summ. J., R. 31). The Court ordered that the Motion would be decided without oral argument. (Order Regarding Hr'g, R. 33).

On September 27, 2021, the Court issued an opinion and order granting Defendant's motion for summary judgment (Op. on Mot. for Summ. J., R. 34). In the opinion and order, the Court held that "Freed's actions in deleting comments by Plaintiff Kevin Lindke on Freed's Facebook page and later blocking Lindke from the page were not state action that required him to conform to constitutional strictures" (Id at Page ID# 1523).

Plaintiff then filed the present appeal. Defendant now files this Brief requesting that the Court affirm the ruling of the Trial Court because the Trial Court correctly found that there was no state action and, thus, properly dismissed the case.

## II. COUNTER STATEMENT OF FACTS

### A. Appellee's Facebook Page

Appellee James Freed created a personal Facebook account with the name "James Freed" and username "JamesRFreed1" while he was in college (prior to 2008) (Mot. for Summ. J., R. 23-2, Page ID # 667-668, 690). The login account for the Page is jamesfreedfacebook@gmail.com—Mr. Freed's personal email account,

not his work email (Reply Br. in Support of Mot. for Summ. J., R. 32, Page ID # 1521).

Facebook profiles have a 5,000 friend limit (Id at Page ID # 668-669). The number of Facebook "friends" Mr. Freed had approached 4,000 to 5,000 (Mot. for Summ. J., R. 23-2, Page ID # 667-668, 690). Somewhere between 2011 and 2013, before Mr. Freed was hired by the City of Port Huron, Facebook allowed a user to convert his or her profile to a Facebook "page," which has no limit on the number of "friends" (Id at Page ID # 669). Mr. Freed was given that option and converted his personal account to a "page," which allowed him to exceed the 5,000 friend limit and "engage with more friends and family on there." (Id at 668-669, 683; see also Mot. for Summ. J., R. 23-3, Page ID # 699). The vast majority of his Facebook "friends" and "followers" were his real-life family and friends (Mot. for Summ. J., R. 23-2, Page ID # 688-89).

When Mr. Freed converted his account to a page, he was required to choose a category for his page (Mot. for Summ. J., R. 23-2, Page ID # 684-685). The categories from which he was required to choose included "Public & Government Service," "Restaurant, "Public Figure," "Politician," "Government Official," or "Musician." Mr. Freed chose "Public Figure" because he believed none of the other categories fit (Id).

This personal Facebook account is Mr. Freed's only Facebook account. Although Plaintiff has directed the court to a Facebook profile "james.freed.3192" (see Br. 12-14) and made the unsupported allegation that this is Defendant Freed's "personal account", a simple review of that Facebook page shows that it is a different person named "James Freed". The page contains a picture of a man who is different in build and appearance than Mr. Freed, the man is pictured with a woman who is different than Mr. Freed's wife who is often depicted in Mr. Freed's Facebook posts, and the man and woman are pictured with two young boys, whereas Mr. Freed has one child, a young daughter, who is also frequently depicted in his Facebook posts. In other words, the picture is of a different family than Mr. Freed, and there is no evidence that it is owned by Mr. Freed (Compare Complaint, R. 1-2 and Resp. to Mot. for Summ. J., R. 28-6, Page ID # 1168 with https://www.facebook.com/james.freed.3192)[1].

### B. Appellee's Facebook Page after his Employment with the City of Port Huron

Mr. Freed was hired by the City of Port Huron in June 2014 as its City Manager, an unelected position (Mot. for Summ. J., R. 23-2). The City of Port Huron itself; however, does not own or operate an official City Facebook page or an account for the City Manager; however, the Port Huron Police Department operates

---

[1] Plaintiff's claim that this Facebook account with a picture of a different family is that of Defendant Freed is not properly supported and does not "pass the laugh test".

a page named "Port Huron Police Department" and the City Parks and Recreation Department operates a page named "City of Port Huron Parks & Recreation Department" (see Mot. for Summ. J., R. 23-4). The police department page expressly states that it is "the official Port Huron Police Department Facebook Page" and contains the Port Huron Police emblem (Mot. for Summ. J., R. 23-4). As Mr. Freed testified, he only wanted a personal Facebook page, not an official city manager Facebook page (Mot. for Summ. J., R. 23-2, Page ID # 679-680).

The "About" section of Mr. Freed's personal Facebook page includes a link to the city website and a city email contact, just as any private citizen could do, and it describes him as "Daddy to Lucy, Husband to Jessie and City Manager, Chief Administrative Officer for the citizens of Port Huron, MI" (Mot. for Summ. J., R. 23-3).

Mr. Freed's Facebook page has used numerous "profile pictures," including a picture of himself, his wife, and his daughter and a headshot (Mot. for Summ. J., R. 23-3; Response to Mot. for Summ. J., R. 23-3, Page ID # 1154). The "cover photo" was a publicly available video that was made to promote downtown Port Huron available on the "Downtown Port Huron" Facebook page (see Mot. for Summ. J., R. 23-3).

Mr. Freed is the sole administrator of his Facebook page and the only person with access to it (Mot. for Summ. J., R. 23-2, Page ID # 679-680). Thus, no City

employee operates or maintains the Facebook page "JamesRFreed1" (Id). The City of Port Huron provided no support, monetary or otherwise, for Mr. Freed's Facebook page and has no involvement with his page (Id). Mr. Freed has never accessed the Facebook page on any City device (Id at Page ID # 676, 679-680).

Mr. Freed is the only person with the ability to make a post on the page. (Id). Facebook users can view his posts and make a comment in response to one of his posts, unless they are "blocked" from making comments (Id).

The vast majority of Mr. Freed's Facebook posts were about personal matters, such as his family, as opposed to City related matters. A review of the posts shows the following breakdown:

| Date | Personal | City | COVID | Total | Percent Personal | Percent COVID |
|------|----------|------|-------|-------|------------------|---------------|
| Mar-19 | 25 | 8 | 0 | 33 | 75.76% | |
| Apr-19 | 24 | 10 | 0 | 34 | 70.59% | |
| May-19 | 29 | 12 | 0 | 41 | 70.73% | |
| Jun-19 | 24 | 9 | 0 | 33 | 72.73% | |
| Jul-19 | 24 | 7 | 0 | 31 | 77.42% | |
| Aug-19 | 21 | 4 | 0 | 25 | 84.00% | |
| Sep-19 | 18 | 12 | 0 | 30 | 60.00% | |
| Oct-19 | 34 | 6 | 0 | 40 | 85.00% | |
| Nov-19 | 24 | 5 | 0 | 29 | 82.76% | |
| Dec-19 | 19 | 6 | 0 | 25 | 76.00% | |
| Jan-20 | 12 | 8 | 0 | 20 | 60.00% | |
| Feb-20 | 16 | 6 | 0 | 22 | 72.73% | |
| Mar-20 | 29 | 10 | 20 | 59 | 49.15% | 33.90% |
| Apr-20 | 33 | 5 | 15 | 53 | 62.26% | 28.30% |
| May-20 | 10 | 4 | 2 | 16 | 62.50% | 12.50% |

[Mot. for Summ. J., R. 23-5 through 23-16.]

The personal posts include: a post about his daughter throwing a birthday party for his family dog (Mot. for Summ. J., R. 23-5, Page ID # 705) (May 7, 2020); a post showing pictures of Mr. Freed and his daughter at a Daddy Daughter Dance

(Mot. for Summ. J., R. 23-8, Page ID #782) (February 6, 2020); a post wishing his wife a happy anniversary (Mot. for Summ. J., R. 23-13, Page ID # 867) (August 4, 2019); and a post about his family trying out a new restaurant in Port Huron (Mot. for Summ. J., R. 23-12, Page ID # 835-836) (October 16, 2019). Appellant draws the Court's attention to the following posts that similarly show Mr. Freed engaging in personal activities:



Mr. Freed testified, "I've shared every -- the majority are family photos, pictures of my dog" (Mot. for Summ. J., R. 23-2, Page ID # 674).

As to City-related posts, Mr. Freed testified that he has not used Facebook to make any original announcements; everything he posted was already announced elsewhere and readily available to the public (Id at 671-672). The posts about the City include a post sharing a press release he released as City Manager regarding incorrectly mailed water bills (Mot. for Summ. J., R. 23-5, Page ID # 713) (April 25, 2020) and a post about town hall meetings he held for employees regarding the City's Comprehensive Financial Plan (Mot. for Summ. J., R. 23-13, Page ID # 849) (September 20, 2019).

In March 2020, much like the rest of the Facebook community, Mr. Freed began posting about the COVID-19 pandemic. (Mot. for Summ. J., R. 23-5 through 23-7). Most of the posts were informative in nature. For example, Mr. Freed shared the St. Clair County Health Department's COVID-19 data and press releases; the City's COVID-19 Resource Page (Mot. for Summ. J., R. 23-7, Page ID # 734)(April 2, 2020); and the City Recreation Department's virtual class offerings (March 20, 2020) (Mot. for Summ. J., R. 23-7, Page ID # 759).

Notably, many other Facebook users shared the same COVID-19 posts that Mr. Freed shared on his Page. For example, on March 31, 2020, Mr. Freed shared the following post from the St. Clair County Health Department's Page, and 105 other Facebook users shared this post as well:



Although there were one or more occasions where Mr. Freed answered a question made in a comment, Mr. Freed never directed any of his posts to City residents (see Mot. for Summ. J., R. 23-5 through 23-16). Mr. Freed never requested feedback from any City residents on his posts, never held any "Q&A" sessions on his page, and never opened up his page for back-and-forth public dialogue (see id.). Mr. Freed has never executed any of his official duties on his Facebook page (Mot. for Summ. J., R. 23-2 Page ID # 679-680).

Mr. Freed acknowledged that he has blocked numerous people from his Facebook page over the years and deleted posts when he did not like the content of the posts because he considered it his personal account (Mot. for Summ. J., R. 23-2, Page ID # 676).

### C. Plaintiff's Posts on Defendant's Facebook Page

Plaintiff admitted that prior to March 2020 he made Facebook posts on other accounts that contain personal attacks against Mr. Freed (Mot. for Summ. J., R. 23-17, Page ID # 1005).  Mr. Freed does not dispute that he deleted posts by Plaintiff on his page and blocked him: "I just remember one time he wrote like three weird smiley faces, and that was like the first time I saw him on my page. And to be quite honest, I was really creeped out, because I had been aware of other things in this community where he had essentially stalked people, harassed people, lots of PPOs and records.  So when I block your client, I blocked him not on what he -- because I can't really recall anything he posted. I blocked him specifically on who he was. And I know what he's done in the community to some school employees and other stuff, so I blocked him just on who he was.  I can't recall besides the three smiley faces anything that he specifically wrote" (Mot. for Summ. J., R. 23-2, Page ID # 678).  Defendant Freed also testified that he deleted things that were "weird" or about his family (Mot. for Summ. J., R. 23-2, Page ID # 679).

Plaintiff claims that he commented on posts on Mr. Freed's Facebook Page four to six times from three different accounts he owns until Mr. Freed deleted the comments and blocked the accounts (Mot. for Summ. J., R. 23-17, Page ID # 979).

Plaintiff testified that it is "very possible" he requested the 9,000 members of his Facebook group "Through My Eyes" also make posts.  (Resp. to Mot. for Summ.

J., R. 23-17, Page ID # 985). Mr. Freed does not dispute that he deleted several other posts that he believed were connected to Plaintiff (Mot. for Summ. J., R. 23-2, Page ID # 678; R. 23-17, Page ID #992).

Mr. Freed continued to maintain his Facebook page until April 2020 when it was involuntarily deactivated by Facebook without explanation (Mot. for Summ. J., R. 23-2, Page ID # 686). Mr. Freed went through the steps to reactivate the account, and it was back up in June 2020 (Id). Shortly thereafter, it was disabled again without explanation and became available again in October 2020, at which time Mr. Freed unpublished the page (Id). Mr. Freed testified that he has no plans to reactive his Facebook page: "If it is not going to be a private page, I don't want it. I don't want to have -- I wouldn't put photos of my family out there. I wouldn't put photos of my kid out there if I didn't have the ability to control it like a personal page. So it is un-published. Nobody can find it" (Id at Page ID # 679-680, 687).

## ARGUMENT

### I.     SUMMARY OF ARGUMENT

Plaintiff, Kevin Lindke, filed the present lawsuit against James R. Freed based upon the actions he took with respect to his personal Facebook account, an account he has had for years. Plaintiff claims that Mr. Freed violated the First Amendment of the Constitution by deleting Plaintiff's comments on Defendant's personal Facebook Page and blocking Plaintiff from his Facebook Page (Complaint, R. 1,

Page ID # 1-16).  The premise of the lawsuit is that Facebook account is an official City of Port Huron Facebook page because James Freed is the City Manager of the City of Port Huron.  On February 17, 2021 Defendant filed a Motion for Summary Judgment, making numerous arguments including that the First Amendment was inapplicable because there is no state action since the Facebook page, which was created years prior to Mr. Freed assuming the role of City Manager was his private account.

On September 27, 2021, the Trial Court granted Defendant summary judgment and dismissed Plaintiff's claims, holding that "Freed administered his Facebook page in a private, not public, capacity. And he was not engaged in state action when he deleted Lindke's comments and blocked Lindke from the page." The Trial Court properly dismissed this case because Mr. Freed was not engaged in state action.

Given the strength of the state action analysis, the Trial Court did not address Defendant's remaining arguments aside from Defendant's mootness argument. However, if the Trial Court had addressed the remaining arguments, there were several alternative grounds to justify the dismissal of this case, in whole or in part, as set forth in more detail below.

## II.    COUNTER-STANDARD OF REVIEW

This Court reviews *de novo* a grant of summary judgment. *Franklin v. Kellogg Co.*, 619 F.3d 604, 610 (6th Cir. 2010). Summary judgment is appropriate when the evidence presented shows that there is "no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 65(a). Under Rule 56, the moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[O]nce the movant has met its initial burden, the non-moving party may not rest on the allegations of [his] complaint, but must produce some evidence of factual issues" Reid v. Sears, Roebuck & Co., 790 F.2d 453, 458-459 (6th Cir. 1986), A Plaintiff is "not entitled 'to get to the jury on the basis of the allegations of their complaints, coupled with the hope that something can be developed at trial. . . .'" Id at 459 [quotations and citations omitted].

## III.    THE TRIAL COURT'S RULING WAS CORRECT

The undisputed facts showed the following:

1. Defendant Freed's Facebook account was his own personal Facebook account that he created years prior to assuming the role of City Manager for the City of Port Huron.

2. The personal Facebook account was Defendant Freed's only personal account. Although Plaintiff attempted to claim that some other James Freed account was also that of Defendant Freed, that claim was unsupported and obviously false.

3. The City of Port Huron maintains an official Facebook page for the "Port Huron Police Department" and the City Parks and Recreation Department but does not have an official account for the Office of City Manager.

4. The sole administrator of the James R. Freed Facebook page is Defendant Freed, its login account is Defendant Freed's own personal email, not his work email, and Defendant Freed operates the account in his personal capacity.

5. No City employee operates or maintains the Facebook page, and the City of Port Huron provides no support, monetary or otherwise to the account. Defendant Freed never accessed the Facebook page from any City owned device.

6. The vast majority of the posts on the Facebook page by Mr. Freed are about personal matters, including extensive posts about his family. Although there are some posts that mention City or other public matters, none of the posts are original announcements and all such posts are already announced elsewhere or readily available to the public.

Based upon this undisputed evidence, the Trial Court correctly concluded that "Freed's actions in deleting comments by Plaintiff Kevin Lindke on Freed's Facebook page and later blocking Lindke from the page were not state action that required him to conform to constitutional strictures" (Id at Page ID# 1523).

### A. The Trial Court Was Correct, Whether Defendant Engaged in State Action Is a Question of Law.

Citing to *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002), the Trial Court held that "[w]hether an individual acted under color of state law is a question of law for the Court's determination." (R. 34, Page ID# 1528). Appellant first argues that the Trial Court erred in finding that state action is a question of law for the Court (Br. 12-28). That claim of error is not well founded. Appellant takes

issue with the Trial Court's analysis because *Neuens* involved a qualified immunity case and, according to Appellant, "it is impossible—in that particular postured legal environment [qualified immunity]—to ever have a question of fact," citing to *Johnson v. City of Saginaw*, 980 F.3d 497, 505-06 (6th Cir. 2020). This is untrue.

First, *Johnson* merely held that an appellate court has jurisdiction to hear an interlocutory appeal in a qualified immunity case "only 'to the extent that it turns on an issue of law'—the appeal cannot be from a district court's determination that there is a genuine dispute of material fact." *Id.* at 505 (citation omitted). Second, the Supreme Court and numerous other circuits courts have held that whether an individual acted under the color of state law is a question of law for the court. *Blum v. Yaretsky*, 457 U.S. 991, 997 (1982) (describing "whether there is state action" as one of "several issues of law"); *Cuyler v. Sullivan*, 446 U.S. 335, 342 n.6 (1980) (describing the state action inquiry as a "question of law"); *see also Nieto v. Kapoor*, 268 F.3d 1208, 1215 (10th Cir. 2001) ("Whether a defendant was a state actor for § 1983 purposes 'is a question of law that we review de novo.'"); *United States v. Stein*, 541 F.3d 130, 148 (2d Cir. 2008) ("[I]t remains a question of law whether the facts as found by the district court establish state action."); *Goldstein v. Chestnut Ridge Volunteer FiR. Co.*, 218 F.3d 337, 344 n.7 (4th Cir. 2000) ("[T]he ultimate resolution of whether an actor was a state actor or functioning under color of law is a question of law for the court."); *Jennings v. Patterson*, 488 F.2d 436, 438 (5th Cir.

1974) ("[S]tate action within the meaning of Section 1983 [is] an issue of law which should never have been submitted to the jury."). Accordingly, the Trial Court was correct that the issue of whether state action existed was a question of law.

Even if state action was not purely a question of law, Appellant admits that the question of state action is "a question of law (similar to *Neuens*) *if* no material facts are in dispute" (Br. 12-30). Appellant then proceeds to attempt to create a genuine issue of fact by citing facts that are not supported by the record or are completely preposterous. For example, Appellant asserts that "[s]omeone (likely one or more employee(s) from the City) is clearly helping Freed because he cannot take his own pictures for posting on his Facebook Page." (Br. at 12-32). As the Trial Court found, this argument is absurd. The Trial Court held, "[S]imply posting photos taken by others—as many people do on Facebook—does not establish that someone other than Freed maintained the page, or that any helper was a City employee, or that the employee was acting in that capacity when helping." (Op. Mot. for Summ. J., R. 34, Page ID #1533). Mr. Freed unequivocally testified that no City employees were involved in the operation of his Facebook Page. (Mot. for Summ. J., R. 23-2, Page ID # 679-680). Courts are not required to find that a genuine issue of material fact exists when one party's version of the facts is blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

The remaining facts upon which Plaintiff relies to create an issue of fact are not disputed by the parties (Br. 12-32). Appellant argues that there is a factual question because Mr. Freed's Facebook Page lists a website as porthuron.org, lists an address of City Hall, lists communitycomments@porthuron.org as an email address, and that the About section of the Page reads "Daddy to Lucy, Husband to Jessie and City Manager, Chief Administrative Officer for the citizens of Port Huron, MI." (Id.). Appellee admits these facts. Accordingly, because there are no material facts in dispute, the Trial Court properly decided the question of whether Appellee was acting under the color of state law as a question of law.

### B. The Trial Court Correctly Found that Appellee Did not Engage in State Action Because he Operated his Facebook Page in a Personal Capacity.

To state a claim under Section 1983, the plaintiff must show (1) that the defendant acted under the color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. 42 U.S.C. § 1983. A public official acts "under color of state law"[2] when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority

---

[2] The Supreme Court has held that Section 1983's "under color of law" and the Fourteenth Amendment's "state action" requirement are treated the same. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

of state law.'"[3] *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). As the Trial Court noted, "it has explained that all of the criteria contained in the three tests 'boil down to a core question': whether 'there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" (Op. on Mot. for Summ. J., $-34, Page ID # 1529-1530 (citations omitted)). Plaintiff takes issue with the Court's conclusions that there lacked sufficient evidence of the necessary state action. The Trial Court's conclusion was correct.

### 1. The Trial Court's Factors for Addressing State Action in the Context of Public Officials' Social Media Pages

Recognizing that neither the Supreme Court nor the Sixth Circuit has applied the state action analysis to public officials' social media pages, the Trial Court compiled a "non-exhaustive" list of factors that other courts have used in determining whether a public official acted under the color of state law in maintaining a social media account. (Op. Mot. for Summ. J., R. 34, Page ID # 1530).

---

[3] In his concurring opinion in the order vacating the decision in *Knight*, Justice Thomas questioned how state action could exist on a public officials' social media pages when the public official does not control the space, i.e. the social media platform. He compared government officials on social media to "government officials who informally gather with constituents in a hotel bar" who "can ask the hotel to remove a pesky patron who elbows into the gathering to loudly voice his views" because the government does not control the space. *Biden v. Knight First Amend. Inst.*, 141 S. Ct. 1220, 1222-23 (2021) (Thomas, J., concurring).

The Trial Court relied upon *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); and *Charudattan v. Darnell*, 510 F.Supp.3d 1101 (N.D. Fla. 2020), *aff'd*, 834 F. App'x 477 (11th Cir. 2020).

The factors the Trial Court considered included: (i) how the public official describes and uses the page; (ii) how others, including government officials and agencies, regard and treat the page; (iii) whether the public official is identified on the page with the public position he or she holds (such as through the title of the page or cover or profile photos); (iv) whether the public official uses the page to announce official business; (v) how the page is categorized (as either a "government official" or a "public figure"); (vi) whether the page includes governmental contact information; (vii) whether posts are expressly addressed to constituents; (viii) whether the public official solicits comments or invites constituents to have discussions on the page; (ix) whether the content posted relates to official responsibilities and business conducted in an official capacity; (x) to whom features of the page are made available; (xi) the use of government resources, including government employees, to maintain the page; (xii) whether creating the account is one of the public official's enumerated duties; (xiii) whether the account will become state property when the public official leaves office; and (xiv) whether the public official's social media activity takes place during normal working hours. *See*

*Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021); *Knight*, 928 F.3d at 236; *Davison*, 912 F.3d at 680–681.  (Op. Mot. for Summ. J., R-34, Page ID# 1531).

It was not error for the Court to analyze these factors, and it was not error for the Court to conclude that these factors, as a whole, showed a lack of state action.

>    **2.      Appellant's First Amendment Claims Fail When Applying the Factors to Mr. Freed's Facebook Page.**

Analyzing the factors used by the Trial Court and other courts clearly shows that Mr. Freed was not engaged in state action when operating his Facebook page.

>    **a.      Factors Regarding the Appearance of Mr. Freed's Facebook Page Show that the Page Is "Overwhelmingly Personal in Nature"**

Though the Trial Court, citing to *Davison*, held that the focus should be "far more on the functional purpose and content of the website than the visual details of the Facebook page," the Trial Court analyzed the visual details of Mr. Freed's Facebook Page and held that such showed the Page's "overwhelmingly personal nature and lack of official trappings."  (Op. Mot. for Summ. J., R 34, Page ID # 1535-1536).  Regarding the first, third, fifth, sixth, tenth, and thirteenth factors, how the public official describes and uses the page, whether the public official is identified on the page with the public position he or she holds, how the page is categorized, whether the page contains governmental contact information, to whom features of the page are made available, and whether the account will become state property when the public official leaves office, the Trial Court held that:

- "Freed's username was not connected to his government position;"

- The "title of the page did not include his official title;"

- "[I]t was not designated as a 'government official' page;"

- "[T]he inclusion of a City address does not indicate that the account belonged to or was "registered" to the City, or that the City had a hand in overseeing the account;"

- "[T]he page itself would not become state property when Freed leaves office;" and

- "[T]he record does not indicate that a city website embedded the page or displayed a link to the page;" and

- "The same can be said about the inclusion of a link to the City's website, as purely private individuals can include links to government websites on their pages."

[Op. Mot. for Summ. J., R-23, Page ID # 1535-36].

The Trial Court's analysis was correct. The "About" section of the Facebook Page describes Mr. Freed as "Daddy to Lucy, Husband to Jessie and City Manager, Chief Administrative Officer for the citizens of Port Huron, MI." (Mot. for Summ. J., R. 23-3, Page ID #699). The page was categorized as a "Public Figure." (Id.). Though a city website and city email address were provided as contact information, the record contains no evidence that the Facebook link was embedded into a city

website.  (Resp. to Mot. for Summ. J., R. 28-14, Page ID #1468).  Moreover, the ability to include a city website and city email address is not unique to Mr. Freed or City employees, as it is possible for any Facebook user.  (Op. Mot. for Summ. J., R. 34, Page ID # 1535).

It is also undisputed that Mr. Freed never used a City-owned device to access his Facebook page, and the undisputed evidence establishes that there was no City involvement in the Page (Id at Page ID # 676, 679-680).

Appellant further argues that Freed's "Facebook connections to thousands of Port Huron residents (and no Grand Rapids residents) via JamesRFreed1 would be of no value if he took a position in another City."  (Br. 12-45-46).  This is directly contradicted by the record, as Mr. Freed testified that the "overwhelmingly vast majority [of friends] are people I know, people I've worked with, family and friends. I speak a lot across the country.  I've spoken to a civic group or I've spoken to an association and follow me. . . . Well beyond the scopes of the City of Port Huron. (Mot. for Summ. J., R. 23-2, Page ID # 688-689).  Moreover, the Trial Court was correct that "the page itself would not become state property when Freed leaves" his

employment[4] with the City[5]; it is axiomatic that the account does not belong to the City, as the login account for the Page is Mr. Freed's personal account—jamesfreedfacebook@gmail.com—and that the account was created six years before Mr. Freed accepted employment with the City. (Reply Br. in Support of Mot. for Summ. J., R. 32, Page ID # 1521, R. 31-4, Page ID # 1520; Mot. for Summ. J., R. 23-2, R. 667-668, 690). *See Charudattan*, 510 F.Supp.3d at 482 (sheriff's page was "privately owned" because the page was created for her private reelection campaign, did not contain posts on behalf of the sheriff's office, was not characterized as a "government official," and was operated by off-duty deputies).

Regarding the fourteenth factor, Appellant argues that Mr. Freed was posting on Facebook during normal working hours. (Br. 12-46). Appellant cites to a single post made by Mr. Freed at 10:02 am on Monday, March 16, 2020. (Id.). Appellant ignores the fact that Mr. Freed testified that he works an irregular schedule and that he is "on call 24/7." (Mot. for Summ. J., R. 23-2, Page ID # 680). Mr. Freed's posts on Facebook occurred at all hours of the day, for example, the post below was posted on Saturday, February 1, 2020 8:56PM in Greenville, Michigan:

---

[4] The Trial Court stated that "when Freed leaves office;" however, it is undisputed that the City Manager position is a non-elected position.

[5] Likewise, Justice Thomas in his concurring opinion in *Biden*, expressed concern applying the First Amendment to a social media platform when "the right to cut off speech lies most powerfully in the hands of private digital platforms." 141 S. Ct. 1227.

Lucy is asleep at Grandma's so we snuck out.

Place: Winter Inn (43.1811111111, -85.2525)
Address: Greenville, Michigan 48838

Feb 1, 2020, 8:56 PM

[Mot. for Summ. J., R-23-8, Page ID # 786.]  Like the rest of Mr. Freed's Facebook

Page, this post is completely lacking any "official trappings" of his position.

> **b.** **The Factors Regarding the Content of Mr. Freed's Facebook Page Also Show that the Page Was a Personal Account.**

The Trial Court held that Mr. Freed "administered his Facebook page in a

personal, not public, capacity" because of the "prevailing personal quality of Freed's

post, lack of formal policy pronouncements, and absence of evidence that it was a

tool for official governance."  (Op. Mot. for Summ. J., R 34, Page ID #1537-1538).

Regarding the fourth, seventh, eighth, and twelfth[6] factors, whether the public

official uses the page to announce official business, whether posts are expressly

addressed to constituents, whether the public official solicits or invites constituents

to have discussions on the page, and whether creating the account is one of the public

official's enumerated duties, the Trial Court specifically found that the content of

---

[6] Appellant's argument regarding the eleventh factor, the use of government resources, including government employees, to maintain the page, is merely that because Mr. Freed is depicted in photographs on his Facebook page, a City employee must have been assisting him in the operation of his Facebook page.  As discussed *supra*, this argument is speculative.

Mr. Freed's Page did not "'principally address[]'" his official duties, and he "did not invite or solicit 'back-and-forth' conversations with people through the page." (Op. on Mot. for Summ. J., R. 34, Page ID#1536).

Appellant has not disputed Mr. Freed's testimony that he never executed any of his official duties on the Facebook page and instead only argues that Mr. Freed's use of the word "we" in his posts supports the eighth factor. (Br. 12-45). The Trial Court correctly found that this "hardly shows official trappings" and was of "de minimis significance" considering the overwhelming evidence that the account was operated as a personal account. (Op. Mot. for Summ. J., R 34, Page ID # 1535). For example, regarding the ninth factor, whether the content posted relates to official responsibilities and business conducted in an official capacity, the Trial Court held that the "instant case presents the reverse the situation in *Davison*. The content that Freed posted had a "strong tendency" toward Freed's family life—rather than updates on City policies." (Op. on Mot. for Summ. J., R. 34, Page ID#1536). The Trial Court provided examples of "photos of Freed's daughter, family, dog, home-improvement projects, and social outings." (Id.). In fact, one of the pages of Mr. Freed's Facebook page Appellant cites demonstrates how obviously private the page was:



file:///C:/Users/OLC/Dropbox/Clio/Lindke, Kevin/01670-James Freed First Amendment Facebook-Lindke/Evidence/Facebook Freed Page/posts/po...   81/255

This page depicts Mr. Freed attending a Rotary Club event with his wife and friends, an Annual Meeting of the Chamber of Commerce, a Daddy Daughter dance with his daughter, and a neighborhood walk with his wife, daughter, and dog.  None of these posts would be in any way relevant to an "official" City Manager page.

Finally, regarding the second factor, how others, including government official and agencies, regard and treat the page, the Trial Court held that "Freed's page contrasts notably with City-operated Facebook pages that readily signaled their

26

official governmental nature. For instance, the Facebook pages for the City's police department and parks and recreation department feature official titles and government emblems." (Op. on Mot. for Summ. J., R. 34, Page ID#1535). Plaintiff relies upon the testimony from a single City resident who testified that "one time" she followed the Facebook page for City information. (Resp. to Mot. for Summ. J., R. 28-7, Page ID#1414). This is a far cry from the county chair's Facebook page in *Davison* that was referred to as a "county" page and promoted as a county newsletter. *Davison v. Loudoun Cty. Bd. of Supervisors*, 912 F.3d 666, 675 (4th Cir. 2019).

Thus, the Trial Court's ruling that Plaintiff failed to show the necessary state action was proper.

## IV. THE TRIAL COURT COULD HAVE GRANTED SUMMARY JUDGMENT ON ALTERNATE THEORIES.

In his Motion for Summary Judgment, Appellee also made the following arguments that are alternative bases for this Court to affirm the Trial Court's grant of summary judgment. These issues were not addressed given the Court's conclusion that there was no state action. However, even if it were assumed *arguendo* that there was some state action, Plaintiff's claims would still be subject to dismissal, in whole or in part on other grounds.

### A. The City Manager's Facebook Page is a nonpublic forum, and the restrictions drawn on Plaintiff's speech were reasonable.

At best, Mr. Freed's Facebook Page is analogous to a judge's small reception area that was considered to be a nonpublic forum by the Sixth Circuit in *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007). The Sixth Circuit held that the judge did not intend "to create a public' forum for expressive activity'" by maintaining an "open door policy" and making himself accessible to individuals seeking to discuss public matters with him. Likewise, the fact that Facebook permits other Facebook users to post comments in response to original posts made by Mr. Freed does not demonstrate an intent by Mr. Freed to create a public forum for expressive activity.

Even if Mr. Freed's Facebook account were considered a limited public forum or a non-public forum, speech may permissibly be limited "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.* (quoting *Cornelius*, 473 U.S. at 806); *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 102-03, 106-07 (2001).

In this case, Mr. Freed unequivocally testified that he blocked Plaintiff because of his past cyber activity and personal attacks. It is reasonable that a municipal employee would not want a poster who regularly disparages him to post on his Facebook Page where he posts picture of his wife and daughter. Accordingly,

Mr. Freed's restriction of Plaintiff's speech was reasonable in light of the purpose served by his Facebook Page.

### B. Defendant was entitled to qualified immunity on the damages claim because the law regarding government officials' use of social media is not clearly established.

To the extent Plaintiff claims that Mr. Freed acted as a governmental employee, Mr. Freed is entitled to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In July 2019, the Sixth Circuit decided *Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019). The plaintiff posted comments on an official police Facebook page that were deleted by two of the defendant officers. The Sixth Circuit held that the officers were entitled to qualified immunity given that the law regarding First Amendment protections for comments on social media platforms is far from clearly established. *Id.* at 433-34; *see also Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 624-27 (S.D.N.Y. 2020) (state senator entitled to qualified immunity because no clearly established law existed to give the senator notice that he could not block the plaintiff from his Facebook page); *Garnier v. Poway Unified Sch. Dist.*, No. 17-CV-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247 (S.D. Cal. Sept. 26, 2019) (school board

members entitled to qualified immunity when blocking plaintiffs from campaign Facebook pages)(attached as Ex. 8).  Likewise, Mr. Freed was entitled to summary judgment on the basis of qualified immunity.

### C. Plaintiff cannot establish a *Monell* claim.

Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself; therefore, a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  In fact, as the Supreme Court has noted in dictum, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985).

To maintain a Section 1983 action against a municipality, a plaintiff must plead and prove the municipality itself caused the constitutional deprivation. *Monell*, 436 U.S. at 694.  A plaintiff must establish that his constitutional or federal rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights.  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007).

Plaintiff cannot point to a policy or custom of the City of Port Huron that contributed to a violation of federal law or any type of a pattern because none exist. Mr. Freed was the sole operator of his Facebook page, and the City provided no support, monetary or otherwise, for the same. Therefore, Plaintiff cannot meet the *Monell* requirements.

> **D. Plaintiff's claims for injunctive and declaratory relief are barred because (1) injunctive and declaratory relief is not available against a defendant in his individual capacity; (2) the Court has no occasion to order relief against the Facebook account of an official City Manager page that does not exist; and (3) Plaintiff's claims are moot because the Facebook Page is unpublished with no plans to reactivate it.**

Plaintiff's claims for injunctive and declaratory relief could have also been dismissed on alternate grounds. First, such a claim may not be pursued against Mr. Freed in his individual capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer*, 502 U.S. at 30); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *McGuire v. Strange*, 83 F. Supp. 3d 1231, 1242 n.8 (M.D. Ala. 2015) (claims for declaratory and injunctive relief cannot be asserted against municipal officials in their individual capacities).

As to the request for such relief based upon the official capacity claim, it is effectively a claim against the City Manager position itself, as the relief obtained in an officially capacity suit "is only nominally against the official and in fact is against the official's office." *Lewis v. Clarke*, 137 S. Ct. 1285, 1292; __ U.S. __ (2017); *see also Gay v. Cabinet for Health & Family Servs. Dep't*, No. 18-5285, 2019 U.S. App. LEXIS 2336, at *18 (6th Cir. Jan. 23, 2019) ("We again note that the individual Defendants can be sued in their *individual* capacity for *money damages*, and additionally, the individual Defendants can be sued in their *official* capacity as to the *injunction* (because injunctions run against the office, not the individual.)")(attached as Ex. 9); *Miller v. Davis*, No. 15-5880, 2015 U.S. App. LEXIS 23060, at *3 (6th Cir. Aug. 26, 2015) ("The injunction operates not against Davis personally, but against the holder of her office of Rowan County Clerk.")(attached as Ex. 10). Accordingly, when "officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Lewis*, 137 S. Ct. at 1292.

Here, there is no occasion to issue an injunction or declaratory relief against the City Manager's position because no "official" City Manager Facebook Page exists.

Finally, injunctive and declaratory relief are inappropriate because the issue is now moot given that Mr. Freed no longer operates his Facebook page, which has

been shut down or inactive for well over a year. Article III of the United States Constitution limits the power of federal courts to "[c]ases" and "[c]ontroversies." U.S. Cons. Art. III, § 2. A federal court "lacks jurisdiction to consider any case or issue that has lost its character as a present, live controversy and thereby becomes moot." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) (to maintain an official capacity claim for injunctive and declaratory relief cognizable under 42 U.S.C. § 1983, plaintiff must plead and be able to prove a continuing violation of his First Amendment rights); *Small v. Brock*, 963 F.3d 539, 543 n.2 (6th Cir. 2020) (holding that, in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief).

Voluntary cessation moots a case where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003) (citation omitted). Government defendants who make representations that certain conduct has been discontinued are entitled to deference, and a court will not revive a moot case by speculating about the defendant's future action. *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003).

The Southern District of New York found that a plaintiff's claims were moot in a case involving a state senator who blocked and muted a Facebook user in

*Wagschal*, 442. F. Supp. 3d at 621-23.  The Court held that the plaintiff's claims were moot because senator "terminated the conduct giving rise to this case long before filing the present motion."  *Id.* at 622.

Assuming *arguendo* that Mr. Freed's actions taken on his Facebook Page were a violation of federal law, which Mr. Freed maintains they were not, Plaintiff's claims are moot because Mr. Freed terminated the conduct giving rise to this case long before filing the instant motion.  Mr. Freed's Facebook page has been unused for well over a year.  Mr. Freed unequivocally testified that he has not published his Facebook page and will not again if he cannot maintain his Facebook page as a personal page.  Thus, Plaintiff's claims are moot.

## CONCLUSION

Based on the foregoing arguments and authorities, Defendant-Appellee James R. Freed requests that the Court affirm the dismissal of this case pursuant to Fed. R. Civ. P. 56.

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Defendant/Appellee

By:  /s/ Todd J. Shoudy_____
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street, Suite F
Port Huron, Michigan  48060
Michigan Bar #41895
tshoudy@fletcherfealko.com

DATED: January 10, 2022

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains less than 14,000 words, i.e. less than 9,000 words calculated by the Microsoft Office Word Version 2016 word processing system used by the undersigned counsel, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2016 and Times New Roman font sized 14 point.

Respectfully Submitted,

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Defendant-Appellee

By: /s/ Todd J. Shoudy
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
Michigan Bar #41895
tshoudy@fletcherfealko.com

Dated: January 10, 2022

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause on January 10, 2022 by electronic filing.

Respectfully Submitted,

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorneys for Defendants-Appellees

By:  /s/ Todd J. Shoudy_____
1411 Third Street, Suite F
Port Huron, Michigan  48060
(810) 987-8444
Michigan Bar #41895
tshoudy@fletcherfealko.com

Dated: January 10, 2022

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Number | Document Name | Date Entered by Court | Page ID # Range |
|---|---|---|---|
| 1 | Complaint filed by Kevin Lindke | | |
| 23 | Defendant's Motion for Summary Judgment | 2/17/21 | 623-661 |
| 23-2 | Ex #1 - Deposition transcript of James Freed | 2/17/21 | 662-698 |
| 23-3 | Ex # 2 - About Section of Facebook Page | 2/17/21 | 699 |
| 23-4 | Ex # 3 - Port Huron Police Department and Port Huron Recreation Department Official Facebook Pages | 2/17/21 | 700-701 |
| 23-5 through 23-16 | Ex # 4 - James Freed Facebook Page | 2/17/21 | 702-956 |
| 23-17 | Ex # 5 - Kevin Lindke Deposition Transcript | 2/17/21 | 957-1036 |
| 28 | Plaintiff's Response to Defendant's Motion for Summary Judgment | 3/24/21 | 1117-1151 |
| 28-6 | Ex. #5 - James Freed Facebook Posts | 3/24/21 | 1157-1411 |
| 28-7 | Ex #6 – Deposition Transcript of Marjorie Dewitt | 3/24/21 | 1412-1416 |
| 28-14 | Ex # 13 – City Manager webpage | 3/24/21 | 1466-1468 |
| 31 | Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment | 4/9/21 | 1504-1515 |
| 32 | Ex # 3 – James Freed account login's Profile printout | 4/9/21 | 1521 |
| 34 | Opinion and Order Granting Defendant's Motion for Summary Judgment | 9/27/21 | 1523-1538 |