No. 21-2977

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

KEVIN LINDKE
*Plaintiff-Appellant*

v.

JAMES R. FREED,
in his official and personal capacities
*Defendants - Appellees*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan – Southern Division
Honorable Mark A. Goldsmith, District Court Judge

_____

**APPELLANT'S CORRECTED SUPPLEMENTAL REPLY**

_____

PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

REPLY ............................................................................................................... 1

    I.    Freed's Misstatements & Misrepresentations ....................... 1

    II.   On Remand ............................................................................ 7

        A.    The *Lindke* Test .......................................................... 8

           i.   The First Prong ..................................................... 8

           ii.  The Second Prong ................................................ 10

    III.  Banning Lindke ................................................................... 12

CONCLUSION ................................................................................................ 13

RELIEF REQUESTED ................................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................... 15

CERTIFICATE OF SERVICE ........................................................................ 16

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS .............................................................. 17

# TABLE OF AUTHORITIES

CASES

*Baumgartner v. United States*,
    322 U.S. 665 (1944) ................................................................... 3

*King v. Taylor*,
    694 F.3d 650 (6th Cir. 2012) ....................................................... 3

*Lawson v. Creely*,
    2024 U.S. Dist. LEXIS 105154 (E.D. Ky. June 13, 2024) ............... 7

*Lindke v. Freed*,
    37 F.4th 1199 (6th Cir. 2022) ..................................................... 11

*Lindke v. Freed*,
    601 U.S. 187 (2024) ........................................................ *in passim*

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................... 2

*Taylor v. City of Saginaw, Mich.*,
    11 F.4th 483 (6th Cir. 2021) ....................................................... 7

COURT RULES

Fed. R. App. P. 28 ............................................................................ 12

# REPLY

Appellee James Freed describes this Circuit's prior duty-and-authority test as being "substantively the same" as to what the Supreme Court announced in *Lindke* and the ordered reversal was nothing more than simple "semantics." **CA6 Appellee Supp. Br., Dk# 58, PageID # 9, 16.** Clearly that is untrue. While bits and bobs of this Circuit's prior test made its way into the wide-ranging standard, the Supreme Court created a whole new specialized framework never before seen because social media is, in legal practice, a new frontier that a needed modern benchmark. And *Lindke* established it. 601 U.S. 187 (2024).

## I. Freed's Misstatements & Misrepresentations

At the threshold, Freed makes certain assertions that are dubious at best and outright falsehoods elsewhere. This is all the more reason why the case should be returned to the District Court to establish a proper record against the backdrop of the new *Lindke* standard.

As one example of many misstatements, Freed characterizes Lindke's deleted comments as "personal attacks" but later concedes he had no recollection of the specific comments. **CA6 Appellee Supp. Br., Dk# 58, PageID # 9, 11.** Yes, Lindke made (and suffered deletion) of)

comments that *criticized* Freed's executive activities and inactions related to COVID[1] as the leader of a good size Michigan city, but he never personally *attacked* him.[2] Instead Freed deleted "anything that could be construed as even slightly negative about him or his leadership or his position as city manager" but if "you tell him what a great guy he is, he leaves all that up." **Lindke Dep., RE 28-11, PageID # 1455**. Lindke confirmed that "the scope of [his] posts on Mr. Freed's [Facebook] page had to do with his pandemic response." *Id.* **at PageID # 1456.** In other words, it was "critical feedback of Mr. Freed and Mayor Repp's actions involving COVID." *Id.* **at PageID # 1454.** None of the comments were vulgar, threatening, or even called for incitement. *Id.* It is just that Freed

---

[1] Freed never took COVID-19 as serious as others in the Port Huron community thought he should. *ICMA Executive Board Approves Public Censures - June 2022*, https://icma.org/articles/member-news/icma-executive-board-approves-public-censures-june-2022 (last visited July 12, 2024) (tweeting Michigan's Governor "@gewhitmer you shouldn't mess with a father who cares about the world his little girl grows up in.") *with* **DeWitt Dep., RE 28-7, PageID #1415** (a citizen having a strong concern in COVID protective measures because "being around people during this pandemic puts [her] children at risk who are immunocompromised.").

[2] While unpopular to observe, even if a citizen verbally "attacked" Freed, such is First Amendment protected speech. Freed must accept "vehement, caustic, and sometimes unpleasantly sharp attacks" on his public actions and the government he leads. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

hated a critical message from a criticizing town crier. But that is part and parcel of being a public official paid from the public fisc. *Baumgartner v. United States*, 322 U.S. 665, 667 (1944) ("One of the prerogatives of American citizenship is the right to criticize public men and measures…"). Citizens of all stripes can question, challenge, and criticize government action and officials' inaction.

However, the precise record is unclear as to what was said on what post and then what comment was later deleted because Freed caused spoilation by turning off (unpublishing) his Facebook Page after litigation commenced. **CA6 Appellee Supp. Br., Dk# 58, PageID # 11.** But as the case is postured, the facts must be construed in favor of Lindke given that the District Court granted summary judgment on Freed's motion without trial. *King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012) ("we view the facts in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences.").

Another problem with Freed's viewpoint is that he believes nothing announced on his Facebook Page "wasn't readily available" elsewhere. **CA6 Appellee Supp. Br., Dk# 58, PageID #8-9.** That too is untrue. In what "press release, newspaper article, or other information source" was

-3-

Freed's March 16, 2020 post (timestamped at 10:02 a.m.) sharing an "administrative directive" that had only been issued "th[at] morning" an hour earlier—



**Post, RE 28-6, PageID #1220.** In short, Freed is being untruthful.

Also tellingly, who else is empowered hold press conferences at City Hall and have their picture taken and to be later posted by government employees paid with tax dollars—




Great press conference today with Mayor Repp announcing the completion of our "Reduce and Restructure Strategy" for unfunded liabilities. This plan is projected to save the taxpayers $87million...Working together, we have ensured that the next generation won't bare the burden of our unfinished business and hardworking public workers are protected. Michigan, a roadmap has been built. Follow it.

Mar 4, 2020, 4:51 PM

**Post, RE 28-6, PageID #1229**.[3] It is only state actors. This post was likely made via technology paid for by the taxpayers of Port Huron.

---

[3] It is posts like this one (and numerous others) that call into question how Freed could, with a straight-face, ever state that this Court cannot find even "a single post wherein Freed is purporting to exercise government authority." **CA6 Appellee Supp. Br., Dk# 58, PageID #33**. Like the naked emperor, Freed's argument is plainly implausible. Freed should be carped for denying the obvious as we should not need an observer to cry out that "the emperor has no clothes." *The Emperor's New Clothes*, https://youtu.be/BKJK4pYlnVc (last visited July 12, 2024). An emperor knowing the observer to be right should not be indulged to being

Jackie Smith, *Council Approves 5-Year Contract with Freed*, TIMES HERALD, Feb 27, 2017 *available at* http://olcplc.com/s/lm7W (personal technology allowance of $1,200 a year).

Yes, individual Facebook posts about things like dogs and dress-up are clearly not state action. See **Post, RE 28-6, PageID # 1183.** But posting about emergencies, press conferences, administrative directives, and government policies is state action, especially when Port Huron residents receive that city information from such posts. **DeWitt Dep., RE 28-7, PageID# 1414.**[4]

---

only clothed in falsehoods. The moral of the story there (as here) is when the emperor has no clothes, *we should say be willing to say so.*

[4] A point of clarification. Freed spends a footnote inappropriately misrepresenting that Lindke is a scofflaw regarding PPO matters. Freed's counsel knows, fully well, that these cases are a local political dispute (**Lindke Dep., RE 28-11, PageID #1453**) as her law firm usually represents the various defendants sued in these cases. See Francis X. Donnelly, *Michigan Renegade Unnerves the Powerful, Becomes Focus of Supreme Court Case*, DETROIT NEWS, Aug 15, 2023, *available at* http://olcplc.com/s/mZVw. Lindke is currently challenging the constitutionality of the Michigan PPO statute that resulted in the cyberstalking conviction as being in violation of the First Amendment and has successfully defeated several attempts by Freed's lawyers to have the case dismissed for the past five years. See *Lindke v. Lane*, US-MIED Case No. 4:19-cv-11905 (Leitman, J.) The federal district court judge recently certified the question of constitutionality to the Michigan Attorney General.

Freed, for his part, has also had his own problems. He has been censured for acting "inappropriate[ly] for a credentialed manager" by the

## II. On Remand

When remanding this case, the Supreme Court explained "speech is attributable to the State only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 191. This analysis "can be difficult." *Id.*

Lindke previously argued that the Supreme Court established a new test. Freed argues the tests are the same. At least one court within this Circuit has already rejected Freed's assertion. *Lawson v. Creely*, 2024 U.S. Dist. LEXIS 105154, at *7 fn.1 (E.D. Ky. June 13, 2024) ("the Supreme Court adopted *a new test* to determine specifically when a public official's use of social media constitutes state action for First Amendment purposes."). This Court should too. With a new test comes new standards and this Court should decline to act at this time as a "court of review" and give first crack to the District Court. *Taylor v. City of Saginaw, Mich.*, 11 F.4th 483, 489 (6th Cir. 2021).

---

International City/County Management Association based on his own social media posts and public communications. *ICMA Executive Board Approves Public Censures - June 2022*, https://icma.org/articles/member-news/icma-executive-board-approves-public-censures-june-2022 (last visited July 12, 2024).

A. The *Lindke* Test

   i. *The First Prong*

Remand is heavily warranted by Freed's ongoing mistakes and misstatements. Under the first prong of the new *Lindke* test, Freed claims he was not authorized to speak on behalf of city formally (by statute, ordinance, or regulation) or by policy (custom or usage). But that is incorrect. As Freed himself conceded on the City Manager webpage, he confirms he is the "chief administrative officer" of the City and in this role he "believes strongly that regular communication with local businesses and residents is essential to good government – and maintains an open door policy." **City Mgr. Webpage, RE 28-14, PageID # 1467.** In other words, he speaks not only on behalf of the City but *regularly does* so as part of his position's responsibilities and a public employee speaks on behalf of the State "when he uses his speech to fulfill "his responsibilities pursuant to state law." 601 U.S. at 201.

And he does speak publicly – *regularly* – as city manager. The public record further confirms that. For example, about a week ago, Freed appeared himself on local radio station to announce a serious emergency water main break with city limits. *WPHM 1380AM*, https://www.

wphm.net/episode/july-5-james-freed-2/ (last visited July 12, 2024).[5] He seemingly did this on his own.[6] There is no suggestion that he had to get permission or authorization from someone else at the City to speak on the City's behalf. And, of course, it is common sense for the head of a city to have customary authority even if not specifically delineated in the municipality's code. In fact, Freed conceded to this Court that in today's digital age if a government official has the authority to speak to the public he would "logically" have the ability to speak publicly on other mediums. Lindke agrees. Because Freed clearly has the customary authority to speak publicly, most notably about emergency issues (given his recent appearance on local radio), he must have certainly had the same customary authority to post on social media on behalf of the City for the then-ongoing COVID emergency measures. As such, contrary to Freed's

---

[5] This easily, from public sources, establishes that Freed's job "actually" includes making official announcements regarding the City's responses to emergencies. **CA6 Appellee Supp. Br., Dk# 58, PageID #37.**

[6] This is yet another misrepresentation made by Freed in his briefing to this Court. He asserted "the Director of Public Safety, not the City Manager, releases emergency public information to the media" citing to the city code. **CA6 Appellee Supp. Br., Dk# 58, PageID #9.** However, in practice, it is Freed who regularly speaks for the City on emergency public information whether a water break or a pandemic.

assertion, there is clearly an established custom or usage to authorize Freed to speak publicly and therefore also "logically" via a social media medium on the City's behalf. Lindke satisfies the first prong of the new *Lindke* standard to warrant remand. Freed's position otherwise to this Court simply does not make sense.[7]

### ii. The Second Prong

As to the second prong of Lindke, Freed argues he did not "exercise that authority when speaking in the relevant social media posts" and then claims that "this Court and the District Court already engaged in that analysis." **CA6 Appellee Supp. Br., Dk# 58, PageID # 20.** That too is untrue. Lindke explained that "categorizing posts that appear on an ambiguous page like Freed's is a "fact-specific" undertaking in which

---

[7] At a recent Port Huron City Council meeting, a local citizen commented about the legal position Freed's attorney undertook here, noting that Freed, as city manager, "isn't allowed to speak for the city anymore; so I'd like some clarification on where his job is and what not because supposedly he's not allowed to speak on reference city topics..." City of Port Huron, *City of Port Huron July 8, 2024*, https://www.youtube.com/live/WQkkHfetX_E (at 30:35). The citizen goes on to say that "I thought that [Freed] was a public figure... and his job was to represent the city..." *Id.* In a rare response to a public comment made by the Mayor, she asserted that "there was no such directive" that Freed was not allow to speak on behalf of the City of Port Huron. *Id.* (at 31:30). "That" statement by the public commenter "was not correct," confirmed the Mayor. *Id.*

the post's content and function are the most important considerations." 601 U.S. at 203. This Court "look[ed] to a page or account *as a whole*, not each individual post." *Lindke v. Freed*, 37 F.4th 1199, 1203 (6th Cir. 2022). The Supreme Court said such was in error. In a "mixed use" account like the kind Freed operated,[8] *Lindke* instructs federal courts to examine the "content and function" of *each* relevant post to determine whether the official was purporting to exercise state authority in that individual post. Stated pointedly, "it is crucial for the plaintiff to show that the official is purporting to exercise state authority *in specific posts*." 601 U.S. at 203. So far that specific analysis never happened. The prior focus of this Court and the District Court was always on the *entire* social media account, not just the relevant posts. As such, the second prong of *Lindke* cannot be answered because the court record is under-developed. But this is not the fault of anyone—a new test means a new legal

---

[8] Freed oddly argues that the Supreme Court never found his account to be a mixed-use account. It, however, largely did. *Lindke*, 601 U.S. at 202 ("Freed's page, however, was not designated either 'personal' or 'official,' raising the prospect that it was 'mixed use'—a place where he made some posts in his personal capacity and others in his capacity as city manager."). Moreover, Freed has already conceded previously that both official and personal posts were made to this same social media account. **MSJ, RE 23, PageID #638.**

yardstick that must be addressed in the first instance in the District Court.

## III. Banning Lindke

Lastly, the Supreme Court noted that "Freed performed two actions to which Lindke objected." Freed 1.) "deleted Lindke's comments" and also 2.) "blocked him from commenting again." 601 U.S. at 204. This cases charges Freed with *both* comment deletion and account blocking. "Because blocking operated on a page-wide basis, a court would have to consider whether Freed had engaged in state action with respect to any post on which Lindke wished to comment." *Id.* This separate claim must be considered – the Supreme Court said so.

In the supplemental brief, Lindke expressly argued that blocking his entire access is precisely what Freed did and took away the ability to comment on Freed's Page. And what is Freed's argument against Lindke's claim that blocking him was a First Amendment violation? Nothing. Should this Court heed Freed's recommendation to keep this case rather than remand to the District Court, reversal is required by waiver. See Fed. R. App. P. 28(b) with 28(a)(8) (requiring, by reference,

appellee's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellee relies).

## CONCLUSION

Social media has altered the way governments operate. As such, *Lindke* created a new yardstick to test when social media postings and related management of comments and access becomes state action. The all-or-nothing status of an account under this Circuit's prior duty-and-authority test has been overruled and replaced with a test that questions the existence of authority (whether formally by statute, ordinance, or regulation or via policy by custom or usage) of a public official about matters of public concern with a fact-specific review in which the relevant post's content and function are the most important considerations. We must start the analytical review anew with the new instructions from the Supreme Court.

## RELIEF REQUESTED

WHEREFORE, the Court is requested to vacate the final judgment entered by the lower court; reverse the grant of summary judgment in favor of Appellee Freed; and remand the matter for further proceedings.

Date: July 15, 2024                    s/ Philip L. Ellison
                                       PHILIP L. ELLISON
                                       OUTSIDE LEGAL COUNSEL PLC
                                       530 West Saginaw St
                                       PO Box 107
                                       Hemlock, MI 48626
                                       (989) 642-0055
                                       pellison@olcplc.com

                                       *Attorney for Appellant*
                                       *Kevin Lindke*

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Century School Book 14-point font. The brief, including headers and footnotes, contains is less than twenty-five (25) pages as ordered by this Court.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: July 15, 2024           s/ Philip L. Ellison
                              PHILIP L. ELLISON
                              OUTSIDE LEGAL COUNSEL PLC
                              530 West Saginaw St
                              PO Box 107
                              Hemlock, MI 48626
                              (989) 642-0055
                              pellison@olcplc.com

                              *Attorney for Appellant
                              Kevin Lindke*

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: July 15, 2024        s/ Philip L. Ellison
                                               PHILIP L. ELLISON
                                               OUTSIDE LEGAL COUNSEL PLC
                                               530 West Saginaw St
                                               PO Box 107
                                               Hemlock, MI 48626
                                               (989) 642-0055
                                               pellison@olcplc.com

                                               *Attorney for Appellant*
                                               *Kevin Lindke*

-17-

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 23 | #623-659 | Motion for Summary Judgment |
| 28-6 | #1157-1411 | Facebook Posts |
| 28-7 | #1412-1416 | DeWitt Deposition Transcript |
| 28-11 | #1439-1457 | Lindke Deposition Transcript |
| 28-14 | #1466-1468 | City Manager Webpage |